# IDAHO *v.* WRIGHT

No. 89–260.   Argued April 18, 1990—Decided June 27, 1990

806

O'CONNOR, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, STEVENS, and SCALIA, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which REHNQUIST, C. J., and WHITE and BLACKMUN, JJ., joined, *post*, p. 827.

*James T. Jones*, Attorney General of Idaho, argued the cause for petitioner. With him on the briefs were *John J. McMahon*, Chief Deputy Attorney General, and *Myrna A. I. Stahman*, Deputy Attorney General.

*Deputy Solicitor General Bryson* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Dennis*, and *Michael R. Dreeben*.

*Rolf Michael Kehne*, by appointment of the Court, 493 U. S. 1067, argued the cause and filed a brief for respondent.*

---

*A brief of *amici curiae* urging reversal was filed for the Commonwealth of Pennsylvania et al. by *Ernest D. Preate, Jr.*, Attorney General of Pennsylvania, and *Marylou Barton*, Chief Deputy Attorney General, *Douglas B. Baily*, Attorney General of Alaska, *Robert K. Corbin*, Attorney General of Arizona, *Steve Clark*, Attorney General of Arkansas, *Duane Woodard*, Attorney General of Colorado, *Charles M. Oberly III*, Attorney General of Delaware, *Robert A. Butterworth*, Attorney General of Florida, *Neil F. Hartigan*, Attorney General of Illinois, *Linley E. Pear-*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case requires us to decide whether the admission at trial of certain hearsay statements made by a child declarant to an examining pediatrician violates a defendant's rights under the Confrontation Clause of the Sixth Amendment.

## I

Respondent Laura Lee Wright was jointly charged with Robert L. Giles of two counts of lewd conduct with a minor under 16, in violation of Idaho Code § 18–1508 (1987). The alleged victims were respondent's two daughters, one of whom was 5½ and the other 2½ years old at the time the crimes were charged.

---

son, Attorney General of Indiana, *Tom Miller*, Attorney General of Iowa, *Robert T. Stephan*, Attorney General of Kansas, *Frederic J. Cowan*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *Joseph Curran, Jr.*, Attorney General of Maryland, *James M. Shannon*, Attorney General of Massachusetts, *Frank J. Kelley*, Attorney General of Michigan, *Mike Moore*, Attorney General of Mississippi, *William L. Webster*, Attorney General of Missouri, *Marc Racicot*, Attorney General of Montana, *Robert M. Spire*, Attorney General of Nebraska, *Brian McKay*, Attorney General of Nevada, *John P. Arnold*, Attorney General of New Hampshire, *Robert Del Tufo*, Attorney General Designate of New Jersey, *Hal Stratton*, Attorney General of New Mexico, *Lacy H. Thornburg*, Attorney General of North Carolina, *Nicholas Spaeth*, Attorney General of North Dakota, *Robert H. Henry*, Attorney General of Oklahoma, *T. Travis Medlock*, Attorney General of South Carolina, *Roger A. Tellinghuisen*, Attorney General of South Dakota, *Paul Van Dam*, Attorney General of Utah, *Jeffrey L. Amestoy*, Attorney General of Vermont, *Godfrey R. de Castro*, Attorney General of the Virgin Islands, *Mary Sue Terry*, Attorney General of Virginia, and *Joseph B. Meyer*, Attorney General of Wyoming.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union by *Margaret A. Berger* and *Steven R. Shapiro;* and for the National Association of Criminal Defense Lawyers by *Natman Schaye.*

*Stephan E. Lawton, John E. B. Myers, Kirk B. Johnson,* and *Thomas R. Finn* filed a brief for the American Professional Society on the Abuse of Children et al. as *amici curiae.*

Respondent and her ex-husband, Louis Wright, the father of the older daughter, had reached an informal agreement whereby each parent would have custody of the older daughter for six consecutive months. The allegations surfaced in November 1986 when the older daughter told Cynthia Goodman, Louis Wright's female companion, that Giles had had sexual intercourse with her while respondent held her down and covered her mouth, App. 47–55; 3 Tr. 456–460, and that she had seen respondent and Giles do the same thing to respondent's younger daughter, App. 48–49, 61; 3 Tr. 460. The younger daughter was living with her parents—respondent and Giles—at the time of the alleged offenses.

Goodman reported the older daughter's disclosures to the police the next day and took the older daughter to the hospital. A medical examination of the older daughter revealed evidence of sexual abuse. One of the examining physicians was Dr. John Jambura, a pediatrician with extensive experience in child abuse cases. App. 91–94. Police and welfare officials took the younger daughter into custody that day for protection and investigation. Dr. Jambura examined her the following day and found conditions "strongly suggestive of sexual abuse with vaginal contact," occurring approximately two to three days prior to the examination. *Id.*, at 105, 106.

At the joint trial of respondent and Giles, the trial court conducted a *voir dire* examination of the younger daughter, who was three years old at the time of trial, to determine whether she was capable of testifying. *Id.*, at 32–38. The court concluded, and the parties agreed, that the younger daughter was "not capable of communicating to the jury." *Id.*, at 39.

At issue in this case is the admission at trial of certain statements made by the younger daughter to Dr. Jambura in response to questions he asked regarding the alleged abuse. Over objection by respondent and Giles, the trial court permitted Dr. Jambura to testify before the jury as follows:

"Q. [By the prosecutor] Now, calling your attention then to your examination of [the younger daughter] on November 10th. What—would you describe any interview dialogue that you had with [her] at that time? Excuse me, before you get into that, would you lay a setting of where this took place and who else might have been present?

"A. This took place in my office, in my examining room, and, as I recall, I believe previous testimony I said that I recall a female attendant being present, I don't recall her identity.

"I started out with basically, 'Hi, how are you,' you know, 'What did you have for breakfast this morning?' Essentially a few minutes of just sort of chitchat.

"Q. Was there response from [the daughter] to that first—those first questions?

"A. There was. She started to carry on a very relaxed animated conversation. I then proceeded to just gently start asking questions about, 'Well, how are things at home,' you know, those sorts. Gently moving into the domestic situation and then moved into four questions in particular, as I reflected in my records, 'Do you play with daddy? Does daddy play with you? Does daddy touch you with his pee-pee? Do you touch his pee-pee?' And again we then established what was meant by pee-pee, it was a generic term for genital area.

"Q. Before you get into that, what was, as best you recollect, what was her response to the question 'Do you play with daddy?'

"A. Yes, we play—I remember her making a comment about yes we play a lot and expanding on that and talking about spending time with daddy.

"Q. And 'Does daddy play with you?' Was there any response?

"A. She responded to that as well, that they played together in a variety of circumstances and, you know, seemed very unaffected by the question.

"Q. And then what did you say and her response?

"A. When I asked her 'Does daddy touch you with his pee-pee,' she did admit to that. When I asked, 'Do you touch his pee-pee,' she did not have any response.

"Q. Excuse me. Did you notice any change in her affect or attitude in that line of questioning?

"A. Yes.

"Q. What did you observe?

"A. She would not—oh, she did not talk any further about that. She would not elucidate what exactly—what kind of touching was taking place, or how it was happening. She did, however, say that daddy does do this with me, but he does it a lot more with my sister than with me.

"Q. And how did she offer that last statement? Was that in response to a question or was that just a volunteered statement?

"A. That was a volunteered statement as I sat and waited for her to respond, again after she sort of clammed-up, and that was the next statement that she made after just allowing some silence to occur." *Id.*, at 121–123.

On cross-examination, Dr. Jambura acknowledged that a picture that he drew during his questioning of the younger daughter had been discarded. *Id.*, at 124. Dr. Jambura also stated that although he had dictated notes to summarize the conversation, his notes were not detailed and did not record any changes in the child's affect or attitude. *Id.*, at 123–124.

The trial court admitted these statements under Idaho's residual hearsay exception, which provides in relevant part:

"Rule 803. Hearsay exceptions; availability of declarant immaterial.—The following are not excluded by the

hearsay rule, even though the declarant is available as a witness.

.   .   .   .   .

"(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Idaho Rule Evid. 803(24).

Respondent and Giles were each convicted of two counts of lewd conduct with a minor under 16 and sentenced to 20 years' imprisonment. Each appealed only from the conviction involving the younger daughter. Giles contended that the trial court erred in admitting Dr. Jambura's testimony under Idaho's residual hearsay exception. The Idaho Supreme Court disagreed and affirmed his conviction. *State* v. *Giles*, 115 Idaho 984, 772 P. 2d 191 (1989). Respondent asserted that the admission of Dr. Jambura's testimony under the residual hearsay exception nevertheless violated her rights under the Confrontation Clause. The Idaho Supreme Court agreed and reversed respondent's conviction. 116 Idaho 382, 775 P. 2d 1224 (1989).

The Supreme Court of Idaho held that the admission of the inculpatory hearsay testimony violated respondent's federal constitutional right to confrontation because the testimony did not fall within a traditional hearsay exception and was based on an interview that lacked procedural safeguards. *Id.*, at 385, 775 P. 2d, at 1227. The court found Dr. Jambura's interview technique inadequate because "the questions and answers were not recorded on videotape for preservation and perusal by the defense at or before trial; and,

blatantly leading questions were used in the interrogation." *Ibid.* The statements also lacked trustworthiness, according to the court, because "this interrogation was performed by someone with a preconceived idea of what the child should be disclosing." *Ibid.* Noting that expert testimony and child psychology texts indicated that children are susceptible to suggestion and are therefore likely to be misled by leading questions, the court found that "[t]he circumstances surrounding this interview demonstrate dangers of unreliability which, because the interview was not [audio or video] recorded, can never be fully assessed." *Id.*, at 388, 775 P. 2d, at 1230. The court concluded that the younger daughter's statements lacked the particularized guarantees of trustworthiness necessary to satisfy the requirements of the Confrontation Clause and that therefore the trial court erred in admitting them. *Id.*, at 389, 775 P. 2d, at 1231. Because the court was not convinced, beyond a reasonable doubt, that the jury would have reached the same result had the error not occurred, the court reversed respondent's conviction on the count involving the younger daughter and remanded for a new trial. *Ibid.*

We granted certiorari, 493 U. S. 1041 (1990), and now affirm.

## II

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

From the earliest days of our Confrontation Clause jurisprudence, we have consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause. See, *e. g., Mattox* v. *United States*, 156 U. S. 237, 243 (1895); *Pointer* v. *Texas*, 380 U. S. 400, 407 (1965).

We reaffirmed only recently that "[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as 'unintended and too extreme.'" *Bourjaily* v. *United States*, 483 U. S. 171, 182 (1987) (quoting *Ohio* v. *Roberts*, 448 U. S. 56, 63 (1980)); see also *Maryland* v. *Craig*, *post*, at 847 ("[T]he [Confrontation] Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial").

Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. See *California* v. *Green*, 399 U. S. 149, 155–156 (1970); *Dutton* v. *Evans*, 400 U. S. 74, 86 (1970) (plurality opinion); *United States* v. *Inadi*, 475 U. S. 387, 393, n. 5 (1986). The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. See, *e. g.*, *Green*, *supra*, at 155–156; *Bruton* v. *United States*, 391 U. S. 123 (1968); *Barber* v. *Page*, 390 U. S. 719 (1968); *Pointer*, *supra*.

In *Ohio* v. *Roberts*, we set forth "a general approach" for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. 448 U. S., at 65. We noted that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." *Ibid.* "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . . , the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ibid.* (citations omitted). Second, once a witness is shown to be unavailable, "his statement is admissible only

if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*, at 66 (footnote omitted); see also *Mancusi* v. *Stubbs*, 408 U. S. 204, 213 (1972).

Applying this general analytical framework to the facts of *Roberts, supra,* we held that the admission of testimony given at a preliminary hearing, where the declarant failed to appear at trial despite the State's having issued five separate subpoenas to her, did not violate the Confrontation Clause. 448 U. S., at 67–77. Specifically, we found that the State had carried its burden of showing that the declarant was unavailable to testify at trial, see *Barber, supra,* at 724–725; *Mancusi, supra,* at 212, and that the testimony at the preliminary hearing bore sufficient indicia of reliability, particularly because defense counsel had had an adequate opportunity to cross-examine the declarant at the preliminary hearing, see *Mancusi, supra,* at 216.

We have applied the general approach articulated in *Roberts* to subsequent cases raising Confrontation Clause and hearsay issues. In *United States* v. *Inadi, supra,* we held that the general requirement of unavailability did not apply to incriminating out-of-court statements made by a non-testifying co-conspirator and that therefore the Confrontation Clause did not prohibit the admission of such statements, even though the Government had not shown that the declarant was unavailable to testify at trial. 475 U. S., at 394–400. In *Bourjaily* v. *United States, supra,* we held that such statements also carried with them sufficient "indicia of reliability" because the hearsay exception for co-conspirator statements was a firmly rooted one. 483 U. S., at 182–184.

Applying the *Roberts* approach to this case, we first note that this case does not raise the question whether, before a child's out-of-court statements are admitted, the Confron-

tation Clause requires the prosecution to show that a child witness is unavailable at trial—and, if so, what that showing requires. The trial court in this case found that respondent's younger daughter was incapable of communicating with the jury, and defense counsel agreed. App. 39. The court below neither questioned this finding nor discussed the general requirement of unavailability. For purposes of deciding this case, we assume without deciding that, to the extent the unavailability requirement applies in this case, the younger daughter was an unavailable witness within the meaning of the Confrontation Clause.

The crux of the question presented is therefore whether the State, as the proponent of evidence presumptively barred by the hearsay rule and the Confrontation Clause, has carried its burden of proving that the younger daughter's incriminating statements to Dr. Jambura bore sufficient indicia of reliability to withstand scrutiny under the Clause. The court below held that, although the trial court had properly admitted the statements under the State's residual hearsay exception, the statements were "fraught with the dangers of unreliability which the Confrontation Clause is designed to highlight and obviate." 116 Idaho, at 389, 775 P. 2d, at 1231. The State asserts that the court below erected too stringent a standard for admitting the statements and that the statements were, under the totality of the circumstances, sufficiently reliable for Confrontation Clause purposes.

In *Roberts*, we suggested that the "indicia of reliability" requirement could be met in either of two circumstances: where the hearsay statement "falls within a firmly rooted hearsay exception," or where it is supported by "a showing of particularized guarantees of trustworthiness." 448 U. S., at 66; see also *Bourjaily*, *supra*, at 183 ("[T]he co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts*, a court need not independently inquire into the reliability of such statements"); *Lee* v. *Illinois*, 476 U. S. 530, 543 (1986)

("[E]ven if certain hearsay evidence does not fall within 'a firmly rooted hearsay exception' and is thus presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness'") (footnote and citation omitted).

We note at the outset that Idaho's residual hearsay exception, Idaho Rule Evid. 803(24), under which the challenged statements were admitted, App. 113–115, is not a firmly rooted hearsay exception for Confrontation Clause purposes. Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements. See *Mattox*, 156 U. S., at 243; *Roberts*, 448 U. S., at 66; *Bourjaily*, 483 U. S., at 183; see also *Lee*, *supra*, at 552 (BLACKMUN, J., dissenting) ("[S]tatements squarely within established hearsay exceptions possess 'the imprimatur of judicial and legislative experience' . . . and that fact must weigh heavily in our assessment of their reliability for constitutional purposes") (citation omitted). The residual hearsay exception, by contrast, accommodates ad hoc instances in which statements not otherwise falling within a recognized hearsay exception might nevertheless be sufficiently reliable to be admissible at trial. See, *e. g.*, Senate Judiciary Committee's Note on Fed. Rule Evid. 803(24), 28 U. S. C. App., pp. 786–787; E. Cleary, McCormick on Evidence § 324.1, pp. 907–909 (3d ed. 1984). Hearsay statements admitted under the residual exception, almost by definition, therefore do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception. Moreover, were we to agree that the admission of hearsay statements under the residual exception automatically passed Confrontation Clause scrutiny, virtually every codified hearsay exception would assume con-

stitutional stature, a step this Court has repeatedly declined to take. See *Green*, 399 U. S., at 155–156; *Evans*, 400 U. S., at 86–87 (plurality opinion); *Inadi*, 475 U. S., at 393, n. 5; see also *Evans, supra*, at 94–95 (Harlan, J., concurring in result).

The State in any event does not press the matter strongly and recognizes that, because the younger daughter's hearsay statements do not fall within a firmly rooted hearsay exception, they are "presumptively unreliable and inadmissible for Confrontation Clause purposes," *Lee, supra*, at 543, and "must be excluded, at least absent a showing of particularized guarantees of trustworthiness," *Roberts, supra*, at 66. The court below concluded that the State had not made such a showing, in large measure because the statements resulted from an interview lacking certain procedural safeguards. The court below specifically noted that Dr. Jambura failed to record the interview on videotape, asked leading questions, and questioned the child with a preconceived idea of what she should be disclosing. See 116 Idaho, at 388, 775 P. 2d, at 1230.

Although we agree with the court below that the Confrontation Clause bars the admission of the younger daughter's hearsay statements, we reject the apparently dispositive weight placed by that court on the lack of procedural safeguards at the interview. Out-of-court statements made by children regarding sexual abuse arise in a wide variety of circumstances, and we do not believe the Constitution imposes a fixed set of procedural prerequisites to the admission of such statements at trial. The procedural requirements identified by the court below, to the extent regarded as conditions precedent to the admission of child hearsay statements in child sexual abuse cases, may in many instances be inappropriate or unnecessary to a determination whether a given statement is sufficiently trustworthy for Confrontation Clause purposes. See, *e. g., Nelson* v. *Farrey*, 874 F. 2d 1222, 1229 (CA7 1989) (videotape requirement not feasible,

especially where defendant had not yet been criminally charged), cert. denied, 493 U. S. 1042 (1990); J. Myers, Child Witness Law and Practice § 4.6, pp. 129–134 (1987) (use of leading questions with children, when appropriate, does not necessarily render responses untrustworthy). Although the procedural guidelines propounded by the court below may well enhance the reliability of out-of-court statements of children regarding sexual abuse, we decline to read into the Confrontation Clause a preconceived and artificial litmus test for the procedural propriety of professional interviews in which children make hearsay statements against a defendant.

The State responds that a finding of "particularized guarantees of trustworthiness" should instead be based on a consideration of the totality of the circumstances, including not only the circumstances surrounding the making of the statement, but also other evidence at trial that corroborates the truth of the statement. We agree that "particularized guarantees of trustworthiness" must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief. This conclusion derives from the rationale for permitting exceptions to the general rule against hearsay:

> "The theory of the hearsay rule . . . is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination. But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation." 5 J. Wigmore, Evidence § 1420, p. 251 (J. Chadbourn rev. 1974).

In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial. The basis for the "excited utterance" exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous. See, e. g., 6 Wigmore, supra, §§ 1745–1764; 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(2)[01] (1988); Advisory Committee's Note on Fed. Rule Evid. 803(2), 28 U. S. C. App., p. 778. Likewise, the "dying declaration" and "medical treatment" exceptions to the hearsay rule are based on the belief that persons making such statements are highly unlikely to lie. See, e. g., Mattox, 156 U. S., at 244 ("[T]he sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of oath"); Queen v. Osman, 15 Cox Crim. Cas. 1, 3 (Eng. N. Wales Cir. 1881) (Lush, L. J.) ("[N]o person, who is immediately going into the presence of his Maker, will do so with a lie upon his lips"); Mosteller, Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment, 67 N. C. L. Rev. 257 (1989). "The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." Huff v. White Motor Corp., 609 F. 2d 286, 292 (CA7 1979).

We think the "particularized guarantees of trustworthiness" required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. Our precedents

have recognized that statements admitted under a "firmly rooted" hearsay exception are so trustworthy that adversarial testing would add little to their reliability. See *Green*, 399 U. S., at 161 (examining "whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement"); see also *Mattox, supra*, at 244; *Evans*, 400 U. S., at 88–89 (plurality opinion); *Roberts*, 448 U. S., at 65, 73. Because evidence possessing "particularized guarantees of trustworthiness" must be at least as reliable as evidence admitted under a firmly rooted hearsay exception, see *Roberts, supra*, at 66, we think that evidence admitted under the former requirement must similarly be so trustworthy that adversarial testing would add little to its reliability. See *Lee v. Illinois*, 476 U. S., at 544 (determining indicia of reliability from the circumstances surrounding the making of the statement); see also *State v. Ryan*, 103 Wash. 2d 165, 174, 691 P. 2d 197, 204 (1984) ("Adequate indicia of reliability [under *Roberts*] must be found in reference to circumstances surrounding the making of the out-of-court statement, and not from subsequent corroboration of the criminal act"). Thus, unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

The state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. See, *e. g., State v. Robinson*, 153 Ariz. 191, 201, 735 P. 2d 801, 811 (1987) (spontaneity and consistent repetition); *Morgan v. Foretich*, 846 F. 2d 941, 948 (CA4 1988) (mental state of the declarant); *State v. Sorenson*, 143 Wis. 2d 226, 246, 421 N. W. 2d 77, 85 (1988) (use of terminology unexpected of a child of similar age); *State v. Kuone*, 243 Kan. 218, 221–222, 757 P. 2d 289, 292–293 (1988) (lack

of motive to fabricate). Although these cases (which we cite for the factors they discuss and not necessarily to approve the results that they reach) involve the application of various hearsay exceptions to statements of child declarants, we think the factors identified also apply to whether such statements bear "particularized guarantees of trustworthiness" under the Confrontation Clause. These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining "particularized guarantees of trustworthiness" under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.

As our discussion above suggests, we are unpersuaded by the State's contention that evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears "particularized guarantees of trustworthiness." To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. Cf. *Delaware* v. *Van Arsdall*, 475 U. S. 673, 680 (1986). "[T]he Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Roberts, supra,* at 65 (quoting *Snyder* v. *Massachusetts*, 291 U. S. 97, 107 (1934)). A statement made under duress, for example, may happen to be a true statement, but the circumstances under which it is made may provide no basis for supposing that the declarant is particularly likely to be telling the truth—indeed, the circumstances may even be such that the declarant is particularly *un*likely to be telling the truth. In such a case, cross-examination at trial would be highly useful to probe the declarant's state of mind when he made the statements; the presence of evidence tend-

ing to corroborate the truth of the statement would be no substitute for cross-examination of the declarant at trial.

In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility. Indeed, although a plurality of the Court in *Dutton* v. *Evans* looked to corroborating evidence as one of four factors in determining whether a particular hearsay statement possessed sufficient indicia of reliability, see 400 U. S., at 88, we think the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless,* rather than that any basis exists for presuming the declarant to be trustworthy. See *id.*, at 90 (BLACKMUN, J., joined by Burger, C. J., concurring) (finding admission of the statement at issue to be harmless error, if error at all); see also 4 D. Louisell & C. Mueller, Federal Evidence § 418, p. 143 (1980) (discussing *Evans*).

---

*The dissent suggests that the Court unequivocally rejected this view in *Cruz* v. *New York*, 481 U. S. 186, 192 (1987), but the quoted language on which the dissent relies, *post*, at 832, is taken out of context. *Cruz* involved the admission at a joint trial of a nontestifying codefendant's confession that incriminated the defendant, where the jury was instructed to consider that confession only against the codefendant, and where the defendant's own confession, corroborating that of his codefendant, was introduced against him. The Court in *Cruz*, relying squarely on *Bruton* v. *United States*, 391 U. S. 123 (1968), held that the admission of the codefendant's confession violated the Confrontation Clause. 481 U. S., at 193. The language on which the dissent relies appears in a paragraph discussing whether the "interlocking" nature of the confessions was relevant to the applicability of *Bruton* (the Court concluded that it was not). The Court in that case said nothing about whether the codefendant's confession would be admissible against the defendant simply because it·may have "interlocked" with the defendant's confession.

Moreover, although we considered in *Lee* v. *Illinois* the "interlocking" nature of a codefendant's and a defendant's confessions to determine whether the codefendant's confession was sufficiently trustworthy for confrontation purposes, we declined to rely on corroborative physical evidence and indeed rejected the "interlock" theory in that case. 476 U. S., at 545–546. We cautioned that "[t]he true danger inherent in this type of hearsay is, in fact, its selective reliability." *Id.*, at 545. This concern applies in the child hearsay context as well: Corroboration of a child's allegations of sexual abuse by medical evidence of abuse, for example, sheds no light on the reliability of the child's allegations regarding the identity of the abuser. There is a very real danger that a jury will rely on partial corroboration to mistakenly infer the trustworthiness of the entire statement. Furthermore, we recognized the similarity between harmless-error analysis and the corroboration inquiry when we noted in *Lee* that the harm of "admission of the [hearsay] statement [was that it] poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment." *Ibid.* (emphasis added).

Finally, we reject respondent's contention that the younger daughter's out-of-court statements in this case are *per se* unreliable, or at least presumptively unreliable, on the ground that the trial court found the younger daughter incompetent to testify at trial. First, respondent's contention rests upon a questionable reading of the record in this case. The trial court found only that the younger daughter was "not capable of communicating to the jury." App. 39. Although Idaho law provides that a child witness may not testify if he "appear[s] incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," Idaho Code § 9–202 (Supp. 1989); Idaho Rule Evid. 601(a), the trial court in this case made no such findings. Indeed, the more reasonable inference is that, by ruling that the statements were admissible under Idaho's residual hearsay

exception, the trial court implicitly found that the younger daughter, at the time she made the statements, was capable of receiving just impressions of the facts and of relating them truly. See App. 115. In addition, we have in any event held that the Confrontation Clause does not erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial. See, *e. g.*, *Mattox*, 156 U. S., at 243–244; see also 4 Louisell & Mueller, *supra*, § 486, at 1041–1045. Although such inability might be relevant to whether the earlier hearsay statement possessed particularized guarantees of trustworthiness, a *per se* rule of exclusion would not only frustrate the truth-seeking purpose of the Confrontation Clause, but would also hinder States in their own "enlightened development in the law of evidence," *Evans*, 400 U. S., at 95 (Harlan, J., concurring in result).

### III

The trial court in this case, in ruling that the Confrontation Clause did not prohibit admission of the younger daughter's hearsay statements, relied on the following factors:

"In this case, of course, there is physical evidence to corroborate that sexual abuse occurred. It also would seem to be the case that there is no motive to make up a story of this nature in a child of these years. We're not talking about a pubescent youth who may fantasize. The nature of the statements themselves as to sexual abuse are such that they fall outside the general believ-ability that a child could make them up or would make them up. This is simply not the type of statement, I believe, that one would expect a child to fabricate.

"We come then to the identification itself. Are there any indicia of reliability as to identification? From the doctor's testimony it appears that the injuries testified to occurred at the time that the victim was in the custody of the Defendants. The [older daughter] has testified as to identification of [the] perpetrators. Those—the identifi-

cation of the perpetrators in this case are persons well known to the [younger daughter]. This is not a case in which a child is called upon to identify a stranger or a person with whom they would have no knowledge of their identity or ability to recollect and recall. Those factors are sufficient indicia of reliability to permit the admission of the statements." App. 115.

Of the factors the trial court found relevant, only two relate to circumstances surrounding the making of the statements: whether the child had a motive to "make up a story of this nature," and whether, given the child's age, the statements are of the type "that one would expect a child to fabricate." *Ibid.* The other factors on which the trial court relied, however, such as the presence of physical evidence of abuse, the opportunity of respondent to commit the offense, and the older daughter's corroborating identification, relate instead to whether other evidence existed to corroborate the truth of the statement. These factors, as we have discussed, are irrelevant to a showing of the "particularized guarantees of trustworthiness" necessary for admission of hearsay statements under the Confrontation Clause.

We think the Supreme Court of Idaho properly focused on the presumptive unreliability of the out-of-court statements and on the suggestive manner in which Dr. Jambura conducted the interview. Viewing the totality of the circumstances surrounding the younger daughter's responses to Dr. Jambura's questions, we find no special reason for supposing that the incriminating statements were particularly trustworthy. The younger daughter's last statement regarding the abuse of the older daughter, however, presents a closer question. According to Dr. Jambura, the younger daughter "volunteered" that statement "after she sort of clammed-up." *Id.*, at 123. Although the spontaneity of the statement and the change in demeanor suggest that the younger daughter was telling the truth when she made the statement, we note that it is possible that "[i]f there is evidence of prior interro-

gation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness." *Robinson*, 153 Ariz., at 201, 735 P. 2d, at 811. Moreover, the statement was not made under circumstances of reliability comparable to those required, for example, for the admission of excited utterances or statements made for purposes of medical diagnosis or treatment. Given the presumption of inadmissibility accorded accusatory hearsay statements not admitted pursuant to a firmly rooted hearsay exception, *Lee*, 476 U. S., at 543, we agree with the court below that the State has failed to show that the younger daughter's incriminating statements to the pediatrician possessed sufficient "particularized guarantees of trustworthiness" under the Confrontation Clause to overcome that presumption.

The State does not challenge the Idaho Supreme Court's conclusion that the Confrontation Clause error in this case was not harmless beyond a reasonable doubt, and we see no reason to revisit the issue. We therefore agree with that court that respondent's conviction involving the younger daughter must be reversed and the case remanded for further proceedings. Accordingly, the judgment of the Supreme Court of Idaho is affirmed.

*It is so ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE BLACKMUN join, dissenting.

The issue is whether the Sixth Amendment right of confrontation is violated when statements from a child who is unavailable to testify at trial are admitted under a hearsay exception against a defendant who stands accused of abusing her. The Court today holds that it is not, provided that the child's statements bear "particularized guarantees of trustworthiness." *Ohio* v. *Roberts*, 448 U. S. 56, 66 (1980). I agree. My disagreement is with the rule the Court invents to control this inquiry and with the Court's ultimate determination that the statements in question here must be inadmissible as violative of the Confrontation Clause.

Given the principle, for cases involving hearsay statements that do not come within one of the traditional hearsay exceptions, that admissibility depends upon finding particular guarantees of trustworthiness in each case, it is difficult to state rules of general application. I believe the Court recognizes this. The majority errs, in my view, by adopting a rule that corroboration of the statement by other evidence is an impermissible part of the trustworthiness inquiry. The Court's apparent ruling is that corroborating evidence may not be considered in whole or in part for this purpose.[1] This limitation, at least on a facial interpretation of the Court's analytic categories, is a new creation by the Court; it likely will prove unworkable and does not even square with the examples of reliability indicators the Court itself invokes; and it is contrary to our own precedents.

I see no constitutional justification for this decision to prescind corroborating evidence from consideration of the question whether a child's statements are reliable. It is a matter of common sense for most people that one of the best ways to determine whether what someone says is trustworthy is to see if it is corroborated by other evidence. In the context of child abuse, for example, if part of the child's hearsay statement is that the assailant tied her wrists or had a scar on his lower abdomen, and there is physical evidence or testimony to corroborate the child's statement, evidence which the child

---

[1] The Court also states that the child's hearsay statements are "presumptively unreliable." *Ante*, at 818. I take this to mean only that the government bears the burden of coming forward with indicia of reliability sufficient for the purposes of the Confrontation Clause, and that if it fails to do so the statements are inadmissible. A presumption of unreliability exists as a counterweight to the indicia of reliability offered by the government only where there is an affirmative reason to believe that a particular category of hearsay may be unreliable. See, *e. g., Lee* v. *Illinois*, 476 U. S. 530, 545 (1986) ("[A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another").

could not have fabricated, we are more likely to believe that what the child says is true. Conversely, one can imagine a situation in which a child makes a statement which is spontaneous or is otherwise made under circumstances indicating that it is reliable, but which also contains undisputed factual inaccuracies so great that the credibility of the child's statements is substantially undermined. Under the Court's analysis, the statement would satisfy the requirements of the Confrontation Clause despite substantial doubt about its reliability. Nothing in the law of evidence or the law of the Confrontation Clause countenances such a result; on the contrary, most federal courts have looked to the existence of corroborating evidence or the lack thereof to determine the reliability of hearsay statements not coming within one of the traditional hearsay exceptions. See 4 D. Louisell & C. Mueller, Federal Evidence § 472, p. 929 (1980) (collecting cases); 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(5)[01] (1988) (same). Specifically with reference to hearsay statements by children, a review of the cases has led a leading commentator on child witness law to conclude flatly: "If the content of an out-of-court statement is supported or corroborated by other evidence, the reliability of the hearsay is strengthened." J. Myers, Child Witness Law and Practice § 5.37, p. 364 (1987).[2] The Court's apparent misgivings

---

[2] A sampling of cases using corroborating evidence as to support a finding that a child's statements were reliable includes: *United States* v. *Dorian*, 803 F. 2d 1439, 1445 (CA8 1986); *United States* v. *Cree*, 778 F. 2d 474, 477 (CA8 1985); *United States* v. *Nick*, 604 F. 2d 1199, 1204 (CA9 1979); *State* v. *Allen*, 157 Ariz. 165, 176–178, 755 P. 2d 1153, 1164–1166 (1988); *State* v. *Robinson*, 153 Ariz. 191, 204, 735 P. 2d 801, 814 (1987); *State* v. *Bellotti*, 383 N. W. 2d 308, 315 (Minn. App. 1986); *State* v. *Soukup*, 376 N. W. 2d 498, 501 (Minn. App. 1985); *State* v. *Doe*, 94 N. M. 637, 639, 614 P. 2d 1086, 1088 (App. 1980); *State* v. *McCafferty*, 356 N. W. 2d 159, 164 (S. D. 1984); *United States* v. *Quick*, 22 M. J. 722, 724 (A. C. M. R. 1986). Numerous other cases rely upon corroboration pursuant to state statutory rules regarding hearsay statements by children. See Myers § 5.38.

Aside from *Lee* v. *Illinois, supra,* discussed *infra,* at 831–832, the only case cited by the Court for the proposition that corroborative evidence is irrelevant to reliability is *State* v. *Ryan,* 103 Wash. 2d 165, 174, 691 P. 2d 197,

about the weight to be given corroborating evidence, see *ante*, at 824, may or may not be correct, but those misgivings do not justify wholesale elimination of this evidence from consideration, in derogation of an overwhelming judicial and legislative consensus to the contrary. States are of course free, as a matter of state law, to demand corroboration of an unavailable child declarant's statements as well as other indicia of reliability before allowing the statements to be ad-

---

204 (1984). The Court quotes the opinion out of context. In holding that corroborating evidence could not be used to demonstrate reliability, the Washington Supreme Court was not interpreting the Confrontation Clause; rather, its opinion clearly reveals that the court's holding was an interpretation of a Washington statute, Wash. Rev. Code. § 9A.44.120 (1989), which provided that hearsay statements from an unavailable child declarant could be admitted into evidence at trial only if they were reliable *and* corroborated by other evidence. The portion of the opinion following the sentence quoted by the majority reveals the true nature of its holding:

"The trial court was apparently persuaded that the statements of the children must be reliable, if, in hindsight they prove to be true. *RCW 9A.44.120 demands more.*

"*The statute* requires separate determinations of reliability *and* corroboration when the child is unavailable. The word 'and' is conjunctive. . . . The Legislature would have used the word 'or' had it intended the disjunctive. . . . Although defendant's confession was offered as corroboration, wholly absent are the requisite circumstantial guarantees of reliability." *State* v. *Ryan, supra,* at 174, 691 P. 2d, at 204 (citations omitted; emphasis added).

Other States also have expressly recognized the need for, and legitimacy of, considering corroborating evidence in determining whether a child declarant's statements are trustworthy and should be admitted into evidence. See Ariz. Rev. Stat. Ann. § 13–1416 (1989); Ark. Rule Evid. 803(25)(A); Cal. Evid. Code Ann. § 1228 (West 1990); Colo. Rev. Stat. § 13–25–129 (1987); Fla. Stat. § 90.803(23) (1989); Idaho Code § 19–3024 (1987); Ill. Rev. Stat., ch. 38, ¶ 115–10 (1989); Ind. Code § 35–37–4–6 (1988); Md. Cts. & Jud. Proc. Code Ann. § 9–103.1 (1989); Minn. Stat. § 595.02(3) (1988); Miss. Code. Ann. § 13–1–403 (Supp. 1989); N. J. Rule Evid. 63 (1989); N. D. Rule Evid. 803(24), Okla. Stat., Tit. 12, § 2803.1 (1989); Ore. Rev. Stat. § 40.460 (1989); 42 Pa. Cons. Stat. § 5985.1 (1989); S. D. Codified Laws § 19–16–38 (1987); Utah Code Ann. § 76–5–411 (1990).

mitted into evidence. Until today, however, no similar distinction could be found in our precedents interpreting the Confrontation Clause. If anything, the many state statutes requiring corroboration of a child declarant's statements emphasize the relevance, not the irrelevance, of corroborating evidence to the determination whether an unavailable child witness' statements bear particularized guarantees of trustworthiness, which is the ultimate inquiry under the Confrontation Clause. In sum, whatever doubt the Court has with the weight to be given the corroborating evidence found in this case is no justification for rejecting the considered wisdom of virtually the entire legal community that corroborating evidence is relevant to reliability and trustworthiness.

Far from rejecting this commonsense proposition, the very cases relied upon by the Court today embrace it. In *Lee* v. *Illinois*, 476 U. S. 530 (1986), we considered whether the confession of a codefendant that "interlocked" with a defendant's own confession bore particularized guarantees of trustworthiness so that its admission into evidence against the defendant did not violate the Confrontation Clause. Although the Court's ultimate conclusion was that the confession did not bear sufficient indicia of reliability, its analysis was far different from that utilized by the Court in the present case. The Court today notes that, in *Lee*, we determined the trustworthiness of the confession by looking to the circumstances surrounding its making, see *ante*, at 821; what the Court omits from its discussion of *Lee* is the fact that we also considered the extent of the "interlock," that is, the extent to which the two confessions corroborated each other. The Court in *Lee* was unanimous in its recognition of corroboration as a legitimate indicator of reliability; the only disagreement was whether the corroborative nature of the confessions and the circumstances of their making were sufficient to satisfy the Confrontation Clause. See 476 U. S., at 546 (finding insufficient indicia of reliability, *"flowing from either*

*the circumstances surrounding the confession or the 'interlocking' character of the confessions,"* to support admission of the codefendant's confession) (emphasis added); *id.*, at 557 (BLACKMUN, J., dissenting) (finding the codefendant's confession supported by sufficient indicia of reliability including, *inter alia,* "extensive and convincing corroboration by petitioner's own confession" and "further corroboration provided by the physical evidence"). See also *New Mexico* v. *Earnest,* 477 U. S. 648, 649, n. (1986) (REHNQUIST, J., concurring); *Dutton* v. *Evans,* 400 U. S. 74, 88–89 (1970) (plurality opinion).

The Court today suggests that the presence of corroborating evidence goes more to the issue whether the admission of the hearsay statements was harmless error than whether the statements themselves were reliable and therefore admissible. See *ante,* at 823. Once again, in the context of interlocking confessions, our previous cases have been unequivocal in rejecting this suggestion:

> "Quite obviously, what the 'interlocking' nature of the codefendant's confession pertains to is not its *harmfulness* but rather its *reliability:* If it confirms essentially the same facts as the defendant's own confession it is more likely to be true." *Cruz* v. *New York,* 481 U. S. 186, 192 (1987) (emphasis in original).

It was precisely because the "interlocking" nature of the confessions heightened their reliability as hearsay that we noted in *Cruz* that "[o]f course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him." *Id.,* at 193–194 (citing *Lee, supra,* at 543–544). In short, corroboration has been an essential element in our past hearsay cases, and there is no justification for a categorical refusal to consider it here.

Our Fourth Amendment cases are also premised upon the idea that corroboration is a legitimate indicator of reliability.

We have long held that corroboration is an essential element in determining whether police may act on the basis of an informant's tip, for the simple reason that "because an informant is shown to be right about some things, he is probably right about other facts that he has alleged." *Alabama* v. *White*, 496 U. S. 325, 331 (1990). See also *Illinois* v. *Gates*, 462 U. S. 213, 244, 245 (1983); *Spinelli* v. *United States*, 393 U. S. 410, 415 (1969); *Jones* v. *United States*, 362 U. S. 257, 271 (1960).

The Court does not offer any justification for barring the consideration of corroborating evidence, other than the suggestion that corroborating evidence does not bolster the "inherent trustworthiness" of the statements. *Ante*, at 822. But for purposes of determining the reliability of the statements, I can discern no difference between the factors that the Court believes indicate "inherent trustworthiness" and those, like corroborating evidence, that apparently do not. Even the factors endorsed by the Court will involve consideration of the very evidence the Court purports to exclude from the reliability analysis. The Court notes that one test of reliability is whether the child "use[d] . . . terminology unexpected of a child of similar age." *Ante*, at 821. But making this determination requires consideration of the child's vocabulary skills and past opportunity, or lack thereof, to learn the terminology at issue. And, when all of the extrinsic circumstances of a case are considered, it may be shown that use of a particular word or vocabulary in fact supports the inference of prolonged contact with the defendant, who was known to use the vocabulary in question. As a further example, the Court notes that motive to fabricate is an index of reliability. *Ibid.* But if the suspect charges that a third person concocted a false case against him and coached the child, surely it is relevant to show that the third person had no contact with the child or no opportunity to suggest false testimony. Given the contradictions inherent in the Court's test when

measured against its own examples, I expect its holding will soon prove to be as unworkable as it is illogical.

The short of the matter is that both the circumstances existing at the time the child makes the statements and the existence of corroborating evidence indicate, to a greater or lesser degree, whether the statements are reliable. If the Court means to suggest that the circumstances surrounding the making of a statement are the best indicators of reliability, I doubt this is so in every instance. And, if it were true in a particular case, that does not warrant ignoring other indicators of reliability such as corroborating evidence, absent some other reason for excluding it. If anything, I should think that corroborating evidence in the form of testimony or physical evidence, apart from the narrow circumstances in which the statement was made, would be a preferred means of determining a statement's reliability for purposes of the Confrontation Clause, for the simple reason that, unlike other indicators of trustworthiness, corroborating evidence can be addressed by the defendant and assessed by the trial court in an objective and critical way.

In this case, the younger daughter's statements are corroborated in at least four respects: (1) physical evidence that she was the victim of sexual abuse; (2) evidence that she had been in the custody of the suspect at the time the injuries occurred; (3) testimony of the older daughter that their father abused the younger daughter, thus corroborating the younger daughter's statement; and (4) the testimony of the older daughter that she herself was abused by their father, thus corroborating the younger daughter's statement that her sister had also been abused. These facts, coupled with the circumstances surrounding the making of the statements acknowledged by the Court as suggesting that the statements are reliable, give rise to a legitimate argument that admission of the statements did not violate the Confrontation Clause. Because the Idaho Supreme Court did not consider these factors, I would vacate its judgment reversing respond-

ent's conviction and remand for it to consider in the first instance whether the child's statements bore "particularized guarantees of trustworthiness" under the analysis set forth in this separate opinion.

For these reasons, I respectfully dissent.