February 19, 1993

501

CLERK OF COURT
SUPREME COURT, CNMI
FILED

93 FEB 19 P 2: 49

BY: _____

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) | APPEAL NO. 92-001 CRIMINAL CASE NO. 90-160 |
| Plaintiff/Appellee, | ) ) | |
| vs. | ) ) | OPINION |
| ANTONIO T. CONDINO, | ) ) | |
| Defendant/Appellant. | ) ) ) | |

Argued and Submitted January 15, 1993

Counsel for Appellant:    Pamela O'Leary-Tower
Assistant Public Defender
Office of the Public Defender
Civic Center
Saipan, MP 96950

Counsel for Appellee:    Cheryl M. Gill
Assistant Attorney General
Office of the Attorney General
2d Administration Building
Capitol Hill
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

This is an appeal from the conviction of defendant, Antonio T. Condino ("Condino"), for sexual abuse of a child. We are asked to determine whether the admission into evidence of the child's hearsay statements at trial violates Condino's right to be

503

confronted with adverse witnesses under Article 1, § 4(b) of the CNMI Constitution.[1]

## FACTUAL and PROCEDURAL HISTORY

On October 1, 1990, at about 10:30 p.m., police officer Johnny A. Tomei was on a routine patrol near the Sugar King Hotel in the "China Town" area of Saipan, when he saw a car parked on the gravel road, in the dark. The officer thought this unusual and called police central station for a license plate check. He received a description which did not match the car with the license plate number. Based on that discrepancy, the officer parked his patrol car, with its lights on, facing the other car. He saw two heads inside the car with the car seats reclined. The officer approached the car and found Condino alone with a child (herein "T. S."). When T. S. came out of the car, the officer observed several red marks on both sides of her neck and that she was "all red between the thighs."[2]

At the scene, T. S. told Officer Tomei her name and that she was 16 years old. However, the officer felt that T. S. appeared to be around 11 or 12 years old and, therefore, requested the DPS juvenile division to assist him. In response, two officers came

---

[1] Article 1, Section 4(b) states: "The accused has the right to be confronted with adverse witnesses and to have compulsory process for obtaining favorable witnesses." Because we affirm the trial court's ruling on this issue, we need not address the second issue raised by appellant -- whether the admission of the hearsay statement is reversible error.

[2] When asked on the witness stand whether these were particular kinds of red marks, the officer responded "yes ma'am, we call it 'hickeys'."

and escorted Condino and T. S. to her guardian's house in China Town. At the guardian's house, T. S. was interviewed by Officer Johnny Sokau. She told the officer that Condino placed the love marks on her neck that night. She also told him that Condino had sexual intercourse with her on September 25th, about a week earlier.

Based on the child's statement, Condino was arrested and taken to the police station where he was advised of his Miranda rights.[3] Condino waived his Miranda rights and confessed that he had engaged in sexual intercourse with T. S. On October 9, 1990, the government charged Condino with the offense of sexual abuse of a child, pursuant to 6 CMC § 1311.

On October 1, 1991, almost a year later, the government received a copy of a psychiatric evaluation report issued by a psychiatrist. The psychiatrist evaluated T. S. to determine her mental stability and capacity to testify at trial. The report states in part:

> Her attachment for Antonio is deep, of an adult-type and would outlast the litigative process. She does dread going to court over this matter and has planned forms for a suicide if forced to permanently separate from Antonio. I cannot dismiss the suicidal preoccupation as a manipulation of an immature person who is determined to get her own way. Although she is not mentally ill in the accepted sense, she has been psychologically worn down by the protracted proceeding. I feel that a continued prosecution of the case will be detrimental to her mental health and could lead to a considerably heightened risk of suicide.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

As a result of the above report, the government, on October 1, 1991, filed its notice of intention to introduce the hearsay statement of T. S., in lieu of her oral testimony, pursuant to Rule 804(b)(5), Commonwealth Rules of Evidence.[4]

The trial court held a hearing on October 2, 1991, and granted the government's motion to introduce T. S.'s hearsay statement into evidence. It ruled, based on the psychiatric report, that T.S. was unavailable to testify as a witness.

The case went to trial and the court admitted, over defense objection, the hearsay statement of T. S. through the testimony of Officer Sokau who had interviewed T. S. and took her statement in October, 1990. The officer testified in relevant part as follows:

> She said she admired Antonio . . . and Antonio Condino admires her and she -- has to ask his family for consent in order to marry her.
>
> She told me -- she told me -- she said that she and Condino made -- had sexual intercourse.

---

[4] Rule 804. <u>Hearsay Exceptions; Declarant Unavailable</u>. . .

(B) <u>Hearsay Exceptions</u>.

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that

(A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

One time on September Twenty-fifth.

It occurred at -- in Antonio Condino's bedroom at Donicio Atalig's house in China Town.

She said that when the -- they made love and when Antonio Condino was coming, he ejaculated on the bed.

Yes. She said that Antonio Condino put the love mark on her neck on October 1st, at Donicio Atalig's house -- their house.

After establishing a *prima facie* case of child abuse based on T. S.'s hearsay statement, the government offered and the trial court admitted the confession of Condino.

The trial court found Condino guilty as charged and sentenced him.[5] Condino timely appealed his conviction on February 18, 1992.

## ANALYSIS

Article 1, Section 4(b) of the CNMI Constitution sets forth the "Confrontation Clause" that is at issue in this case. Because the CNMI Constitution's Confrontation Clause is patterned after the U.S. Constitution's Confrontation Clause (Sixth Amendment), we resort to the U.S. Supreme Court's interpretation of the federal Confrontation Clause in interpreting the CNMI's Confrontation Clause. In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the U.S. Supreme Court was presented with the same issue that is before us.

---

[5] The sentence was two and a half years in jail, all suspended except three months, 400 hours of community work and probation with credit for time served.

In *Wright*, the issue was whether the state, as the proponent of the evidence presumptively barred by the hearsay rule and the Confrontation Clause, had carried its burden of proving that the young child's incriminating statements, made to a doctor, bore sufficient indicia of reliability to withstand scrutiny under the Clause. The child in *Wright*, as in the instant case, was a victim of sexual abuse who was declared unavailable to testify in court. The child's hearsay statement was offered into evidence under a state residual hearsay exception similar to ours.

The U.S. Supreme Court ruled that once a witness is shown to be unavailable, his/her statement may be admitted into evidence only if it bears adequate indicia of reliability. Reliability can be inferred, without more, in a case where the hearsay statement falls within a firmly-rooted hearsay exception. If it does not fall within a firmly-rooted hearsay exception, then the evidence must show "particularized guarantees of trustworthiness," in order to satisfy the Confrontation Clause. *Idaho v. Wright*, 110 S.Ct. at 3147.

The Court in *Wright* recognized that out-of-court statements made by children regarding sexual abuse arise in a wide variety of circumstances. It, therefore, ruled that the Sixth Amendment does not impose a fixed set of procedural prerequisites to the admission of such statements. Instead, the particularized guarantees of trustworthiness must be shown from the totality of the circumstances, i.e., those circumstances surrounding the making of

the statement such that it renders the declarant particularly worthy of belief.

A number of factors relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. It includes the child's spontaneity and consistency in giving her statement; the mental state of the child; use of terminology unexpected of a child of similar age; and the lack of motive to fabricate. However, these factors are not exclusive and courts have considerable leeway in their consideration of other appropriate factors.

> To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.

Idaho v. Wright, 110 S.Ct. at 3150.

Corroborating evidence which is not part of the totality of the surrounding circumstances may not be considered in determining reliability. Idaho v. Wright, 110 S.Ct. at 3150.

In reviewing whether T. S.'s incriminating hearsay statements made to Officer Sokau bear sufficient indicia of reliability so as to satisfy the CNMI Confrontation Clause, we examine whether there are particularized guarantees of trustworthiness from the totality of circumstances surrounding the making of her statements.[6]

The totality of circumstances surrounding the making of the

---

[6] Although corroborating evidence have been offered to support the accuracy and truthfulness of the statements (such as Antonio's confession, psychiatric evaluation report, etc.), we do not take those into consideration.

509

statements began when Officer Tomei found Condino and T. S. alone in the car parked in the dark at China Town. When she came out of the car, she had red marks on her neck and redness between her thighs. She immediately told the officer that she was 16 years old.[7]

Upon the arrival of the two other officers, they immediately escorted Condino and T. S. to her house, which was also in China Town. Officer Sokau interviewed T. S. in her home instead of at the police station. The interview was done before Condino was arrested. She told the officer that she and Condino loved each other and planned to marry. She also told him that about a week earlier, on September 24th, they slept together and on September 25th they had sexual intercourse in Condino's bed. She added that Condino gave her the hickeys that night.

Her statement that they loved each other and planned to marry supports her incriminating statement that they had sexual intercourse and he gave her the hickeys. Such statements are also consistent with their being alone in the car and her having red marks on her neck and inner thighs.[8] She initially attempted to cover-up any wrongdoing by misrepresenting that she was 16 years old. However, the officers did not believe her because she did not look like a 16 year old girl. She then gave the incriminating

---

[7] Later it was confirmed that she was eleven years old.

[8] Indeed, had she told the officer that she did not love Condino and that they had not had any sexual relationship, that would be inconsistent with their being alone in the car and the red marks.

statement. The circumstances within which the statements were made were such that there was no reason for her to lie. It appeared to have been made spontaneously. Finally, there was no motive for her to fabricate the statement which would incriminate someone she apparently loves and cares for.

Based on the totality of circumstances surrounding the making of T. S.'s statement, we conclude that particularized guarantees of trustworthiness are present. We, therefore, hold that the admission of T. S.'s hearsay statement incriminating Condino did not violate his right to be confronted by an adverse witness. The trial court's admission of the statement was correct. We **AFFIRM** the judgment of conviction.

Dated this _19th_ day of _February_, 1993.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice