956 F.2d 1163
 35 Fed. R. Evid. Serv. 320
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry A. TUCKER, Defendant-Appellant.
 No. 91-5283.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1992.
Decided March 11, 1992.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden, II, Chief District Judge. (CR-90-82-2)
 Argued: Arthur T. Ciccarello, Sr., Lewis, Ciccarello & Friedberg, Charleston, W.Va., for appellant; Joseph Francis Savage, Jr., Assistant United States Attorney, Charleston, W.Va., for appellee.
 On Brief: Michael J. Del Guidice, Thomas G. Casto, Lewis, Ciccarello & Friedberg, Charleston, W.Va., for appellant; Michael W. Carey, United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Larry A. Tucker appeals his convictions under 18 U.S.C. §§ 1503, 1623 (1988), contending that the district court erred in admitting the grand jury testimony of a deceased witness at Tucker's trial.[1] Finding no error, we affirm the district court judgment.
 
 I.
 
 2
 Appellant Larry A. Tucker is a real estate broker and former President of the West Virginia Senate who pled guilty on September 11, 1989 to extortion under color of office in violation of the Hobbs Act, 18 U.S.C. § 1951(b)(2) (1988). The terms of Tucker's plea agreement required Tucker to cooperate with investigative authorities by testifying truthfully before a federal grand jury and by providing truthful information about his prior financial dealings to Special Agent Charles Little of the Internal Revenue Service.
 
 
 3
 Tucker, however, testified falsely before the grand jury, and falsely represented to Special Agent Little, that he had properly reported on prior tax returns all the income that he had previously earned, including any income which he received from nursing home interests. Cecil Nichols, a principal of Continental Health Care ("CHC"), testified before a subsequent grand jury on January 9, 1990 that CHC paid Tucker $100,000 in 1984 as compensation for locating suitable sites in West Virginia for the construction of nursing homes. Through a ruse involving the deposit of this $100,000 into an account ostensibly maintained by Fricks, Inc., an unprofitable business operated by one of Tucker's business associates, Tucker sought to conceal most of this $100,000 in income from the I.R.S. and to avoid payment of income tax thereon. Nichols testified before the grand jury that, at Tucker's request, CHC executed checks totalling $100,000 to Fricks, Inc.--rather than to Tucker personally--as payment for Tucker's services in locating sites for CHC nursing homes.
 
 
 4
 On June 21, 1990, Tucker was indicted for obstruction of justice in violation of 18 U.S.C. § 1503, and making false declarations before a grand jury in violation of 18 U.S.C. § 1623. Since Nichols was deceased by the time of Tucker's trial, the district court admitted Nichols' testimony before the grand jury regarding CHC's payments by check to Fricks, Inc. for Tucker's benefit. Tucker was convicted of both offenses on December 10, 1990.
 
 II.
 
 5
 Tucker argues that the district court violated his rights under the Sixth Amendment's Confrontation Clause by admitting Nichols' grand jury testimony at Tucker's trial. Tucker correctly observes that Nichols' statements before the grand jury are hearsay, which the district court admitted under the exception to the hearsay rule provided in Fed.R.Evid. 804(b)(5).[2]
 
 
 6
 As this court recently observed in United States v. Ellis, "A twopart test determines whether 'incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause.' " Nos. 90-5726, 91-5771, 1991 WL 260433, at*2 (4th Cir. Jan. 7, 1992) (quoting Idaho v. Wright, 110 S.Ct. 3139, 3146 [1990]. The prosecution must first show that the declarant was unavailable. Id. The prosecution must then show that the statements exhibit the requisite indicia of reliability. Id. The Supreme Court instructs that the reliability of the statements may be shown "in one of two ways: either by showing that the statements 'fall [ ] within a firmly rooted hearsay exception' or by showing that the statements bear sufficient guarantees of trustworthiness." Ellis, Nos. 90-5726, 91-5771, 1991 WL 260433, at*2 (4th Cir. Jan. 7, 1992) (quoting Idaho v. Wright, 110 S.Ct. 3139, 3147 [1990].
 
 
 7
 Nichols was deceased by the time of Tucker's trial, and therefore unquestionably was unavailable to testify. We are left with the determination of the second part of the test recited in Idaho, 110 S.Ct. at 3147, i.e., whether Nichols' statements exhibited indicia of reliability sufficient for purposes of the Confrontation Clause.[3]
 
 
 8
 In United States v. Ellis, Nos. 90-5726, 91-5771, 1991 WL 260433, at*2 (4th Cir. Jan. 7, 1992), this court found sufficient guarantees of the trustworthiness of a deceased witness' statements based upon these facts.
 
 
 9
 First, [the witness] issued the statements voluntarily in the presence of two government agents and both of his attorneys. Second, [the witness] made the statements in accordance with a plea agreement which required him to be truthful with federal investigators. Third, the government agents were taking notes in the presence of [the witness] as the statements were made. Fourth, [the witness] could be deemed to know, in view of the plea agreement, that what he was saying would be the subject of further investigation--and confirmation--by the government. Fifth, though the plea agreement did not require him to do so, [the witness] agreed to record subsequent conversations with the individuals he had implicated ... suggesting that he was willing to have the truthfulness of these statements tested. Id.
 
 
 10
 We find that similar circumstances exist here, and that Nichols' statements exhibit indicia of trustworthiness sufficient for purposes of the Confrontation Clause. Nichols testified before the grand jury pursuant to an immunity agreement which he had voluntarily entered under advice from his attorney and which required him to give truthful statements regarding his dealings with Tucker. Nichols' attorney was present outside the courtroom at the time of the grand jury proceedings, and Nichols was afforded the opportunity to confer with his attorney at any point during his testimony. Nichols, no doubt, understood from the nature of the grand jury proceedings that the information contained in his testimony would be the subject of further investigation. The United States Attorney could have revoked Nichols' grant of immunity were it discovered that Nichols testified falsely. Because Nichols' statements before the grand jury were under oath, false testimony could have subjected Nichols to prosecution under 18 U.S.C. § 1623.
 
 
 11
 We conclude for these reasons that Nichols' statements clearly met the requirements for trustworthiness adumbrated in United States v. Ellis, Nos. 90-5726, 91-5771, 1991 WL 260433, at*2 (4th Cir. Jan. 7, 1992), and we accordingly affirm the decision of the district court.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Tucker raised other grounds for appeal in his brief. However, at oral argument, Tucker's counsel elected to confine the appeal solely to the issue of the district court's admission at trial of a deceased witness' grand jury testimony. We shall do likewise, and do not here consider the other issues raised in Appellant's brief. We are confirmed in this course by the opinion that none of the unargued issues has any merit
 
 
 [2]
 Fed.R.Evid. 804(b)(5) permits admission of hearsay statements where the declarant is unavailable, the statement exhibits circumstantial guarantees of trustworthiness equivalent to those described in 804(b)(1) to -(b)(4), and the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will be best served by admission of the statement into evidence
 
 
 [3]
 Since Fed.R.Evid. 804(b)(5) is not a traditional hearsay exception, see, e.g., Ellis, Nos. 90-5726, 91-5771, 1991 WL 260433, at n. 1 (4th Cir. Jan. 7, 1992), this issue is one of whether Nichols' statements showed sufficient guarantees of trustworthiness