**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**WILFRED BREWER, Defendant**

GOVERNMENT OF THE VIRGIN ISLANDS v. BREWER

Criminal No. 358/1995

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

April 30, 2001

ROSALIND A. KELLY, ESQ., Assistant Attorney General, V.I. Department of Justice, *Attorney for the Government*.

CURTIS V. GOMEZ, ESQ., Dudley, Topper and Feuerzeig, St. Thomas, U.S.V.I., *Attorney for defendant*.

HOLLAR, *Judge*

## MEMORANDUM OPINION

(April 30, 2001)

This matter came before the Court on January 7, 1997, pursuant to the defendant's motion for judgment of acquittal or in the alternative for a new trial. When the Government failed to timely oppose defendant's motion, the defendant renewed his motion on March 11, 1997, requesting the Court to deem conceded the motion for judgment of acquittal. Before

the Court ruled on defendant's motions, the Government filed its belated response on April 3, 1997, opposing the defendant's motions. The last motion filed by defense counsel was a motion to withdraw as counsel for defendant because he accepted an appointment as an Assistant United States Attorney with the Federal Government.[1]

## I. FACTS AND PROCEDURAL BACKGROUND

On or about August 19, 1995, at the Tutu Highrise Housing Complex, Wayne Christopher (hereinafter "victim") was shot. Defendant, Wilfred Brewer (hereinafter "Brewer" or "defendant") was arrested ten (10) days later and charged in a three (3) count information with: (1) first degree assault, with the intent to commit murder; (2) assault in the third degree, with a deadly weapon; and (3) unlawful possession of a firearm.

At the bench trial, the victim failed to appear. Over defense counsel's vehement objection, the Government successfully moved into evidence notes taken by Detective Cordell Rhymer, recording the victim's statement identifying Brewer as the man who shot him.

The Government also called Laverne Cannonier (hereinafter "Cannonier") as a witness. She testified that she knew the defendant for many years and was familiar with his voice. On August 19, 1995, shortly before she heard shots, Cannonier recognized the defendant's voice when he stated he was going to kill the victim. Furthermore, when the victim fell into her apartment door, the victim told Cannonier that Brewer was the one who shot him.

At the close of the Government's case, the defendant made an oral motion for judgment of acquittal as to all counts pursuant to FED. R. CRIM. P. 29(a). The Court denied the motion as to Count I, first degree assault, with the intent to commit murder and Count II, third degree assault with a deadly weapon, but the Court granted the motion for judgment of acquittal on Count III, unlawful possession of a firearm.[2] The defense then rested and renewed the Rule 29(a) motion on the remaining two counts which was denied. The Court, however, found the defendant not guilty on Count II, third degree assault with a deadly

---

[1] The judge who presided over the bench trial retired before ruling on the post-trial motions.

[2] Until Act No. 6123 was enacted into law on November 22, 1996, amending V.I. CODE ANN. tit. 23, § 470(b), a 24 hour grace period existed, thus making convictions under V.I. CODE ANN. tit. 14, § 2253 virtually impossible.

weapon, but guilty of Count I, first degree assault, with the intent to commit murder.

## II. DISCUSSION

The issues to be addressed by the Court are: (1) whether the defendant is entitled to a judgment of acquittal; (2) whether the defendant is entitled to a new trial; (3) whether the victim's hearsay statement to Detective Rhymer was improperly admitted; and (4) whether there was sufficient evidence to support a finding of guilt.

Although the motion for a new trial was timely filed and the victim's statement to the Detective was improperly admitted, for reasons stated below, the Court finds that sufficient evidence existed to sustain the finding of guilt.

### A. The Motion For Judgment Of Acquittal Is Time Barred By Fed. R. Crim. P. 29.

A motion for judgment of acquittal, pursuant to FED. R. CRIM. P. 29(c), must be made or renewed within seven (7) days after the jury is discharged.[3] The standard utilized in ruling upon a motion for judgment of acquittal, pursuant to FED. R. CRIM. P. 29(a) or FED. R. CRIM. P. 29(c), is the same regardless of whether the motion is at the close of the government's evidence, at the close of all the evidence or after discharge of the jury. 2A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 465 (3d ed. 2000); U.S. v. Austin, 585 F.2d 1271, 1273 n.2 (5th Cir. 1978). That standard requires evidence to be viewed in the light most favorable to the Government and the Court must determine as a matter of law that a reasonable jury could not find the defendant guilty beyond a reasonable doubt. Walters v. Government of the Virgin Islands, 36 V.I. 101 (D.V.I. 1997).

---

[3] FED. R. CRIM. P. 29(c) sets forth as follows:

If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

This rule is the same even when there is no jury. See 2A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 467 n.37 (3d ed. 2000); U.S. v. Austin, 585 F. 2d 1271, 1273 n.2 (5th Cir. 1978).

On December 11, 1996, the trial judge found the defendant guilty of first degree assault, with intent to commit murder. Therefore, pursuant to Rule 29(c), the defendant's post trial motion for judgment of acquittal should have been filed on or before Friday, December 20, 1996.

■ On December 23, 1996, a motion extending time to file for a new trial, pursuant to TERR. CT. R. 135, was filed. The motion did not include a request to extend the time to file a renewed motion for judgment of acquittal. *Even if* counsel for the defendant requested an extension of time to file a motion for judgment of acquittal, it would have been three days too late. In emphasizing the strictness of the time limits of Rule 29, the United States Supreme Court held that "there is simply no room in the text of Rule 29 ... for the granting of an untimely post-verdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." *Carlisle v. U.S.*, 116 S. Ct. 1460, 1464 (1996), quoted in 2A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 465 (3d ed. 2000). On January 7, 1997, the defendant filed his renewed motion for judgment of acquittal. Because the motion was filed some eighteen (18) days after the deadline, the motion for judgment of acquittal must be denied, as time barred.

## B. Defendant's Motion For A New Trial, Pursuant To TERR. CT. R. 135, Was Timely Filed And Thus, May Be Considered.

■ Defendant's motion for a new trial was filed within the statutorily prescribed deadline. Such a motion must be made within ten (10) days after a finding of guilt, or within such time as the court may fix during the 10-day period. TERR. CT. R. 135. The guilty finding in this matter was rendered on December 11, 1996. Defense counsel, on December 23, 1996, requested an extension of time to file a motion for a new trial. That motion was filed within the ten (10) day period since Saturdays, Sundays and holidays are excluded, pursuant to TERR. CT. R. 9.[4] As a result of

---

[4] TERR. CT. R. 9 states in its entirety:

In computing any period of time prescribed or allowed by these rules, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor holiday. *When a period of time prescribed or*

filing for enlargement of time within the time prescribed by TERR. CT. R. 135, only "cause" had to be shown for relief to be granted, instead of "excusable neglect," which is a much higher standard. *Kansas Packing Co. v. Lavilla*, 39 V.I. 71 (Terr. Ct. 1998). *See also* TERR. CT. R. 10.[5]

The Court, by Order dated December 27, 1996, granted an extension for defendant to file a motion for a new trial, assigning January 7, 1997, as the new deadline for submission. Defendant filed his motion and memorandum for a new trial on January 7, 1997. Hence, the filing was timely.

### C. The Motion For A New Trial Should Be Denied Because The Government Introduced Sufficient, Independent Evidence

■ If required in the interest of justice, the Court may grant a new trial to a defendant. TERR. CT. R. 135.[6] "A motion for a new trial is addressed to the sound discretion of the Court and should be granted only in exceptional cases where the evidence preponderates heavily against the verdict." *Government of the V.I. v. Grant*, 19 V.I. 440 (Terr. Ct. St. C. 1983). Although it is conceded that the defendant, in the case under consideration, was denied the right to confront the victim, the Court

---

*allowed by these rules is less than eleven days, intermediate Saturdays, Sundays and holidays shall be excluded from the computation* (emphasis added).

[5] TERR. CT. R. 10 reads:

When an act is required or allowed to be done at or within a specified time-

(a) The court for cause shown may at any time in its discretion:

1. With or without notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous court order.

2. On motion, permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect.

(b) The court may not enlarge the period within which motion may be made for a new trial, for correcting an illegal sentence, or for taking an appeal, except that upon a clear showing of good cause and the absence of prejudice, the period for taking an appeal may be extended for a period not exceeding 30 days.

[6] TERR. CT. R. 135 provides as follows:

The Court may grant a new trial to a defendant if required in the interest of justice. The Court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment. A motion for a new trial based on other grounds shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period. In no event shall this rule be construed to limit the right of the defendant to apply to the court for a new trial on the ground of fraud or lack of jurisdiction.

nevertheless finds that the admission of the hearsay statement was harmless error because the Government introduced other independent evidence to substantiate a finding of guilt.

## 1. The victim's incriminating statement to Detective Rhymer was improperly admitted because the Government failed to show that the statement bore any indicia of reliability.

Preliminarily, the legislature of the Virgin Islands enacted a comprehensive set of rules of evidence when it adopted the Uniform Rules of Evidence and incorporated those rules in the 1957 Virgin Islands Code. See V.I. CODE ANN. tit. 5, § 711-956. Notwithstanding the promulgations of the Uniform Rules of Evidence by the local legislature, Rule 26 of the Federal Rules of Criminal Procedure governed the admissibility of evidence and was made applicable to the Virgin Islands by FED. R. CRIM. P. 54. Thus, the Uniform Rules of Evidence are not applicable in local criminal actions. See note preceding V.I. CODE ANN. tit. 5, § 711; *Government of the Virgin Islands v. Sampson*, 94 F. Supp. 2d 639, 648 (D.V.I. 2000); *Government of the Virgin Islands v. Dyches*, 507 F.2d 106, 108 & n. 2 (3d Cir. 1975); *see also Government of the V.I. v. Pondt*, 456 F. 2d 679, 681 (3d Cir. 1972). Our analysis of the rules on hearsay are therefore derived from the Federal Rules of Evidence.

While incriminating statements may be admissible under some exception to the hearsay rule, the statements may nevertheless fail to survive a constitutional challenge under the confrontation clause in criminal cases, unless the prosecution establishes that the declarant, whose statement it wishes to use, is unavailable *and* the hearsay statement reflects adequate indicia of reliability. Adequate indicia of reliability can be met, without any further proof, if the statement falls within a "firmly rooted" hearsay exception. Otherwise, the statement must be supported by a showing of a particularized guarantee of trustworthiness. *Idaho v. Wright*, 110 S. Ct. 3139, 3140 (1990).

 The victim's statement to the police officer, in the case at bar, did not show any particularized guarantee of trustworthiness since the judge did not have the opportunity to observe the victim's demeanor; the victim's statement was not made under oath, as it was in *Ohio v. Roberts*, 100 S. Ct. 2231 (1980);[7] the statement does not fall within *any* identified

---

[7] In the landmark case, *Ohio v. Roberts*, 100 S. Ct. 2531 (1980), the United States Supreme Court held that introduction of evidence at defendant's trial, of the preliminary

hearsay exception; and defense counsel had no chance to cross-examine the victim. *See also*, *Government of the Virgin Islands v. Tranberg*, 28 V.I. 52, 56 (Terr. Ct. 1993). Furthermore, the statement did not fall within any recognized "firmly rooted" hearsay exception. While lower courts have struggled with establishing which exceptions under FED. R. EVID. 803 and 804 are "firmly rooted," *See* 30A CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., 30A FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6367 (2000), the United States Supreme Court, in *Lilly v. Virginia*, 119 S. Ct. 1887, 1888 (1999) held that "a hearsay exception is 'firmly rooted' for Confrontation Clause purposes if, in light of longstanding judicial and legislative experience, it rests on such a solid foundation that admission of virtually any evidence within it, comports with the substance of the constitutional protection." (Per Justice Stevens with three justices concurring and five justices concurring in the judgment). Additionally, statements admitted under a "firmly rooted" hearsay exception are deemed to be so trustworthy, that adversarial testimony would add little to their reliability. WRIGHT, *supra*; *California v. Green*, 399 U.S. 149, 161 (1930). Certain exceptions to the hearsay rule have been traditionally recognized as being "firmly rooted." Among those exceptions are the: (1) "dying declaration;" (2) "excited utterance" or "spontaneous declaration" and (3) statements made to a physician in the course of receiving medical care.

■ A "dying declaration," pursuant to FED. R. EVID. 804(b)(2), is presumed to remove all temptation to falsehood, *Mattox v. United States*, 156 U.S. 237, 244 (1895) as cited in WRIGHT at § 3149, because the statements are made under the belief of pending death and persons making such statements are unlikely to lie. *Id.*

■ The "excited utterance" or "spontaneous declaration" exception under FED. R. EVID. 803(2) are at least two centuries old and are undeniably within the "firmly rooted" exception because the statements are given under circumstances that eliminate the possibility of fabrication or coaching since the statements relate to a startling event or condition

---

hearing testimony of a witness, who was not produced at trial, was constitutionally permissible where the witness' prior testimony bore an indicia of reliability. *Id.* Ample opportunity was given to defense counsel in *Roberts* to question the witness at the preliminary hearing, as made evident by the record which was replete with leading questions. Consequently, the defendant's confrontation rights were preserved even though the witness was unavailable at trial.

11

made while the declarant was under the stress of excitement caused by the event or condition. *White v. Illinois*, 112 S. Ct. 736, 743 n.8 (1992), see 6 J. WIGMORE, EVIDENCE § 1747 and 30A WRIGHT AND GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7043 (2000).

■ Statements made in the course of receiving medical care have also been established to be "firmly rooted" in *White, supra*, because the Court noted that the context of such statements guarantee trustworthiness because false information given to a doctor can lead to misdiagnosis and mistreatment.

If the victim's statement to Detective Rhymer, made several days after the shooting, met the criteria of one of the "firmly rooted" exceptions to the hearsay rule, no further proof of trustworthiness would be necessary to overcome a Sixth Amendment challenge. If, on the other hand, the statement did not come within a "firmly rooted" exception, but satisfied some other hearsay exception, then an independent showing of particularized guarantee of trustworthiness would be necessary to survive a confrontational clause challenge.

■ Even though the victim in the case, *sub judice*, was unavailable under FED. R. EVID. 804(a)(5), this did not satisfy any hearsay exception pursuant to FED. R. EVID. 804(b), since the declarant's statement: (1) was not made in former testimony; (2) was not a statement made under belief of impending death; (3) was not a statement made against interest; (4) was not a statement of personal or family history; (5) was not a forfeiture by wrongdoing (fraud); or (6) was not a statement made under the residual exception clause of FED. R. EVID. 807.[8]

---

[8] The residual hearsay exception [FED. R. EVID. 807] is not a firmly rooted hearsay exception for confrontation clause purposes. The residual exception accommodates *ad hoc* instances in which statements not otherwise falling within any recognized hearsay exception, might nevertheless be reliable and admissible. WRIGHT at 3147. FED. R. EVID. 807 states "a statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."

In fact, the victim's statement did not fall within any of the twenty-three (23) exceptions of FED. R. EVID. 803, thus foreclosing any possibility of admissibility. The statement had the character of an accusatory *ex parte* affidavit, and thus was violative of the primary objective of the Confrontation Clause, which is to prevent use of depositions or *ex parte* affidavits against a defendant in lieu of personal examination and cross examination of the witness. *White* at 745, citing *Maddox* at 242. Accordingly, Detective Rhymer's written notes, containing the victim's statement accusing the defendant of shooting him, bore no indicia of reliability or trustworthiness and was thus admitted improperly.

2. **Notwithstanding the inadmissibility of the victim's inculpatory hearsay statement, there was sufficient independent evidence admitted at trial to sustain a finding of guilt.**

To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess independent indicia of reliability by virtue of its inherent trustworthiness. Evidence corroborating the truth of an original statement cannot support a finding that the statement bears requisite particularized guarantees of trustworthiness. *Wright, supra.* Presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless. *Id.* At trial, there was independent evidence that the defendant shot the victim. Government witness, Cannonier, testified that she heard the voice of the defendant, shortly before she heard shots, saying that he was going to kill the victim. She further testified that she has known the defendant for many years and was familiar with his voice. Additionally, she testified that when the victim fell into her door, he (the victim) told her that the defendant, Brewer, was the one who shot him. Even though Cannonier did not witness the shooting, she knew the defendant's voice and the victim, immediately after being shot, *told her* that the defendant shot him. The statement made by the victim to Cannonier is an exception to the hearsay rule, even if the declarant was unavailable at trial, because it relates to a startling event made while the declarant (the victim) was under the stress of excitement caused by the event, pursuant to FED. R. EVID. 803(2). Additionally, the statement has indicia of reliability and trustworthiness because the evidence falls within the "firmly rooted hearsay exception." 30B M. GRAHAM, FEDERAL PRACTICE AND

13

PROCEDURE: EVIDENCE § 7032 (Interim Edition 2000).[9] Since Laverne Cannonier's testimony represented admissible, reliable evidence of the defendant's guilt, separate and apart from the improperly admitted hearsay statement by the victim to the detective implicating the defendant, sufficient and persuasive evidence was established to sustain the finding of guilt. Ergo, the motion for a new trial is denied.

## III. CONCLUSION

In conclusion, the motion by the defendant for a judgment of acquittal must be denied as time barred. The motion for a new trial, while filed timely, must be denied because there was sufficient independent evidence supporting a finding of guilt despite the improper admission of the hearsay statement to Detective Rhymer. Hence, the finding of guilt and subsequent conviction on Count I of the information are sustained.

---

[9] Since the statement by the victim was made immediately after being shot and the victim did not have time to reflect or ponder the event and there was an absence of time to fabricate the statement relating to the shooting, the hearsay testimony by Cannonier was properly admitted.