[No. E030941. Fourth Dist., Div. Two. Feb. 10, 2003.]

In re DANIEL W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DANIEL W., Defendant and Appellant.

## COUNSEL

Patrick E. DuNah, under appointment by the Court of Appeal; and Amanda F. Doerrer for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez

and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—On July 23, 2001, a juvenile wardship petition was filed against Daniel W., age 17, under Welfare and Institutions Code section 602. The petition alleged that Daniel had committed sodomy with a person under the age of 14 years and more than 10 years younger than defendant, in violation of Penal Code section 286, subdivision (c)(1). The petition further alleged Daniel had committed a lewd and lascivious act on a child under the age of 14, in violation of Penal Code section 288, subdivision (a).

After a contested jurisdictional hearing, the allegations were found to be true. After a contested dispositional hearing, Daniel was placed in the California Youth Authority for eight years.

Daniel appeals, contending that use of the minor victim's hearsay statements against him violated his due process and confrontation rights.

## FACTS

On July 20, 2001, Daniel's mother was living in Lone Pine. Her sister and three of the sister's children were visiting Daniel's mother. One of the children, Chad, who was age four at the time, was the molestation victim. Daniel was also visiting his mother. He normally resided in Nebraska with his grandmother and was a ward of the court in Nebraska. Daniel was acting as Chad's babysitter at the time of the molestation.

Daniel's mother testified that she went to pick up her sister and Chad. When she did so, her sister told her that Chad had said he did not want to sit down because his butt hurt, and it hurt because "Danny put his pee-pee in his butt too hard." The statements were admitted only to explain the mother's subsequent conduct. Subsequently, Chad made the same statement to Daniel's mother. Daniel's mother then took Chad to the hospital. Daniel's mother was present at the hospital when Chad reiterated the same statements to the medical staff. Daniel was then taken into custody.

A criminalist testified that presumptive tests for semen were positive on Chad's underwear and on rectal swabs. In addition, the examining doctor and a hospital nurse each testified that he heard Chad say that "Danny put

his pee-pee in his butt too hard." At the time, the doctor and the nurse were examining Chad to determine the cause of his rectal trauma. A police officer also testified he heard Chad make the same statements in the hospital.

The doctor also testified that there were physical signs of trauma, including rectal penetration. The physical signs were consistent with sodomy. Based on this testimony, the trial court found that the allegations of the petition were true. Daniel was committed to the California Youth Authority for eight years.

## DISCUSSION

On appeal, Daniel contends the trial court erred in admitting Chad's hearsay statements into evidence. He contends the trial court's reliance on those statements violated his right to confront and cross-examine witnesses against him (Pen. Code, § 686), and that the statements were not admissible as exceptions to the hearsay rule under Evidence Code sections 1253 and 1360.

The confrontation clause provides that a criminal defendant is entitled to confront the witnesses against him or her. "If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. [Citation.] But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." (*Ohio v. Roberts* (1980) 448 U.S. 56, 63 [100 S.Ct. 2531, 2537, 65 L.Ed.2d 597].)

The Supreme Court went on to discuss the relationship of the confrontation clause and the hearsay exceptions and concluded the discussion as follows: "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." (*Ohio v. Roberts, supra*, 448 U.S. at p. 66 [100 S.Ct. at p. 2539], fn. omitted.)

Daniel relies on *Idaho v. Wright* (1990) 497 U.S. 805 [110 S.Ct. 3139, 111 L.Ed.2d 638]. In that case the Supreme Court held that the admission at trial of certain hearsay statements made by a two-and-one-half-year-old girl to a pediatrician violated defendant's rights to confront the witness. The Supreme Court began by noting the confrontation clause does not necessarily prohibit

the admission of hearsay statements against a criminal defendant. (*Id.* at p. 813 [110 S.Ct. at p. 3145].) "The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. [Citations.]" (*Id.* at p. 814 [110 S.Ct. at p. 3146].) The court followed its earlier decision in *Ohio v. Roberts, supra,* 448 U.S. 56, which set forth a general approach used to determine "when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. [Citation.]" (*Idaho v. Wright, supra,* 497 U.S. 805, 814 [110 S.Ct. 3139, 3146].) Under that approach, the prosecution must either produce the witness or demonstrate the unavailability of the witness. "[O]nce a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' [Citations.]" (*Id.* at pp. 814-815 [110 S.Ct. at p. 3146].)

Assuming the younger daughter was an unavailable witness, the issue in *Wright* was whether her statements "bore sufficient indicia of reliability to withstand scrutiny under the Clause." (*Idaho v. Wright, supra,* 497 U.S. 805, 816 [110 S.Ct. 3139, 3147].) Since the statements were not admitted under a firmly rooted hearsay exception, but rather under the state's residual hearsay exception, the court considered whether there were " 'particularized guarantees of trustworthiness' " in the making of the statements. (*Id.* at p. 819 [110 S.Ct. at p. 3148].) In other words, the statements must be made under circumstances that are at least as reliable as statements made under a recognized hearsay exception. (*Id.* at pp. 820-821 [110 S.Ct. at pp. 3149-3150].) "[T]he unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." (*Id.* at p. 822 [110 S.Ct. at p. 3150].) Under the totality of the circumstances in that case, the court found "no special reason for supposing that the incriminating statements were particularly trustworthy." (*Id.* at p. 826 [110 S.Ct. at p. 3152].) Accordingly, it agreed with the Idaho Supreme Court that the statements were inadmissible. (*Id.* at p. 827 [110 S.Ct. at pp. 3152-3153].)

Daniel applies *Idaho v. Wright* here by contending that the statements were not admissible as a hearsay exception under Evidence Code section 1360. That section provides that statements by minors in child abuse proceedings are admissible if "the time, content, and circumstances of the statement provide sufficient indicia of reliability." (Evid. Code, § 1360, subd. (a)(2).) If the child does not testify, the court must also find the child is unavailable as a witness. (Evid. Code, § 1360, subd. (a)(3)(B).)

Daniel argues that these requirements were not met here, and the trial court accordingly erred in admitting the statements under both Evidence Code sections 1360 and 1253.

Since Evidence Code section 1360 states that it applies only if the statement is not otherwise admissible by statute or court rule, we first consider whether the statements were admissible under Evidence Code section 1253.

Evidence Code section 1253 provides: "Subject to Section 1252, evidence of a statement is not made inadmissible by the hearsay rule if the statement was made for purposes of medical diagnosis or treatment and describes medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. This section applies only to a statement made by a victim who is a minor at the time of the proceedings, provided the statement was made when the victim was under the age of 12 describing any act, or attempted act, of child abuse or neglect. . . ."

Evidence Code Section 1252 provides: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

The statements here clearly fall within this statutory exception to the hearsay rule. Daniel's mother testified that she took Chad to the hospital for treatment. The hospital would not treat Chad in his mother's absence so Daniel's mother and Chad left and returned with Chad's mother. Chad was then seen by the doctor. The doctor testified that Chad said: "My butt hurts because Danny put his pee-pee in too hard." The doctor then examined Chad and found physical signs corroborating Chad's statement. A nurse who prepared Chad for the doctor's examination also testified that he heard Chad make the same statement. At the time the nurse was trying to determine what caused the rectal damage.

Evidence Code section 1253 was enacted in 1995. (Stats. 1995, ch. 87, § 2, p. 222.) The sole case interpreting it is *People v. Brodit* (1998) 61 Cal.App.4th 1312 [72 Cal.Rptr.2d 154]. *Brodit* explains that the section was patterned after rule 803(4) of the Federal Rules of Evidence (28 U.S.C.), and that "[t]he federal courts have consistently held that a child's statements describing the nature and circumstances of sexual abuse, made in the course of a child sexual abuse examination, such as the one nurse Elliff performed here, are admissible under the rule as they are reasonably pertinent to diagnosis or treatment. [Citations.] Moreover, although a declarant's statement to a physician that identifies the person responsible for the declarant's

injuries is ordinarily inadmissible under Federal Rules of Evidence, rule 803(4) (28 U.S.C.), a hearsay statement revealing the identity of a sexual abuser who is a member of the victim's family or household is admissible where the abuser has such an intimate relationship with the victim that the abuser's identity becomes reasonably pertinent to the victim's proper treatment. This is because '[a]ll victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family and household.' [Citations.] [¶] Thus, the statements Athena made to nurse Eliff were admissible, including the statement identifying appellant, a member of her family, as the abuser." (*Brodit,* at p. 1331.)

We agree that, in a family situation, the identity of the abuser is reasonably pertinent to the question of proper treatment of the victim. In such a situation, proper treatment must include emotional and psychological treatment, in addition to treatment of the physical manifestations of abuse. Obviously, it would not be proper to treat the physical symptoms and then return the victim to the same family situation which facilitated the abuse in the first place. Since treatment must include emotional and psychological treatment, a hearsay statement which identifies the abuser as a member of the household is admissible under Evidence Code section 1253.

*Brodit* also addressed the trustworthiness issue: "[A]lthough those statements were not spontaneous, Athena consistently repeated them (with minor variations) to at least five adults. Second, there is nothing about Athena's mental state at the time she made the statements which indicates the statements were unreliable. Third, Athena's description of the sexual acts showed a knowledge of such matters far beyond the expected level of a child her age. In our view, appellant has not shown the statements were made 'under circumstances such as to indicate [their] lack of trustworthiness.' (Evid. Code, § 1252.)" (*People v. Brodit, supra,* 61 Cal.App.4th 1312, 1332.)

 The same considerations govern here. Daniel has not shown any reason why Chad's statement to the treating doctor and nurse should be considered unreliable or untrustworthy. The statement was made shortly after the incident, and no motive to lie was shown. Daniel's mother told Chad that they had to go to the hospital so that "the doctor would fix it so that it didn't hurt [any] more if Chad would let the doctor see him, and he was more than happy to go." Chad therefore knew he was going to the doctor for treatment. Chad repeated the statement, in the same terms, to all five adults who asked him, and he showed a knowledge of matters beyond

the knowledge of a normal four year old. The requirements of Evidence Code sections 1252 and 1253 were met, as they were in *Brodit.* In both cases, there was sufficient evidence that the statements were made for the purpose of medical diagnosis and treatment, and that they were trustworthy. No further showing is needed.

Daniel cites various federal cases interpreting Federal Rules of Evidence, rule 803(4) (28 U.S.C.). The rule itself provides a hearsay exception for "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." (Fed. Rules Evid., rule 803(4).) Daniel cites cases such as *U.S. v. Joe* (10th Cir. 1993) 8 F.3d 1488, in which the court said: "The Rule 803(4) exception to the hearsay rule is founded on a theory of reliability that emanates from the patient's own selfish motive—her understanding 'that the effectiveness of the treatment received will depend upon the accuracy of the information provided to the physician.' [Citation.]" (*U.S. v. Joe, supra,* at pp. 1493-1494.) The court goes on to discuss the position of various circuits on the issue of whether statements identifying the abuser are within the exception.

The Ninth Circuit Court of Appeals addressed this issue in *U.S. v. George* (9th Cir. 1992) 960 F.2d 97: "George contends that statements identifying an assailant do not fall within the medical examination exception. The advisory committee notes to Rule 803(4) observe that statements of fault will not ordinarily be admissible under the exception. However, other circuits have held that statements by a victim identifying her sexual abuser are admissible under the medical examination exception. [Citations.] The critical inquiry is whether such statements are 'made for the purposes of medical diagnosis or treatment' and are 'reasonably pertinent to diagnosis or treatment.' [Citation.] [¶] . . . We hold, therefore, that the district court did not abuse its discretion in admitting Dr. Ortiz-Pino's hearsay testimony pursuant to Fed.R.Evid. 803(4) and that George's rights under the Confrontation Clause were not violated." (*U.S. v. George, supra,* at pp. 99-100.)

We find it unnecessary to discuss the federal cases further. Whatever the genesis of Evidence Code section 1253, Chad's statement to the doctor was clearly admissible under that section, including its identification of the offender. We therefore reject Daniel's contention that there was insufficient evidence that the statement was made for the purpose of medical diagnosis or treatment.

As the Supreme Court has noted, a statement made pursuant to this exception is a widely accepted and firmly rooted hearsay exception. (*White*

*v. Illinois* (1992) 502 U.S. 346, 355, fn. 8 [112 S.Ct. 736, 742, 116 L.Ed.2d 848].) Since the statement was admitted pursuant to a firmly rooted hearsay exception, the statement is trustworthy, and an extended analysis of particularized guarantees of trustworthiness is unnecessary: "Our precedents have recognized that statements admitted under a 'firmly rooted' hearsay exception are so trustworthy that adversarial testing would add little to their reliability. [Citations.] Because evidence possessing 'particularized guarantees of trustworthiness' must be at least as reliable as evidence admitted under a firmly rooted hearsay exception . . . , we think that evidence admitted under the former requirement must similarly be so trustworthy that adversarial testing would add little to its reliability. [Citations.]" (*Idaho v. Wright, supra,* 497 U.S. 805, 820-821 [110 S.Ct. 3139, 3149].) Although the statements were excluded in *Idaho v. Wright,* they had been admitted under a residual hearsay exception, and not under a specific, firmly rooted exception.

■ As noted above, *Idaho v. Wright* endorses the approach used in *Ohio v. Roberts, supra,* 448 U.S. 56. Both cases suggest that, to avoid a confrontation clause violation, the statements of the declarant must be reliable, and the declarant must be unavailable. Reliability is established when the statements are admitted under a firmly rooted hearsay objection. The subsequent cases of *United States v. Inadi* (1986) 475 U.S. 387 [106 S.Ct. 1121, 89 L.Ed.2d 390] and *White v. Illinois, supra,* 502 U.S. 346 eliminated the argument that a finding of unavailability was required: "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding. [Citation.]" (*White v. Illinois, supra,* 502 U.S. 346, 354 [112 S.Ct. 736, 741].) The court concluded: "But where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." (*Id.* at p. 356 [112 S.Ct. at p. 743].)

A showing of unavailability is not constitutionally required. (*White v. Illinois, supra,* 502 U.S. 346, 348-349 [112 S.Ct. 736, 739].) ■ But even if unavailability had to be shown, there was ample evidence that Chad was unavailable as a witness. After Daniel's arrest, Chad's mother had taken him back to Nebraska. The district attorney took steps to compel the mother to produce Chad at the jurisdictional hearing. On the date of the hearing, the district attorney filed his declaration of due diligence which described his efforts to have the mother and Chad testify in California. He stated his conclusion that they were intentionally avoiding the service of process in Nebraska. Attachments to the declaration included a report of a conversation with Chad's mother in which she declined to testify against Daniel, and

refused to bring Chad to California to testify. As the deputy district attorney stated: "Ms. [W.] expressed far more concern about her nephew, Daniel [W.] the juvenile defendant, than her son, Chad, the victim." The trial court impliedly found Chad unavailable, and the evidence supports that conclusion.

We conclude that neither the confrontation clause nor the hearsay rule barred Chad's statement because the statement was properly admissible under the hearsay exception of Evidence Code section 1253. Although other witnesses testified to the same statement under circumstances that might not qualify for the hearsay exception, no jury was involved, and the multiple admission of such statements was, at most, harmless error under any standard.

DISPOSITION

The judgment is affirmed.

McKinster, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 23, 2003.