# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2232-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE V. JARQUIN-JARQUIN,

     Defendant-Appellant.

_____

> Submitted February 25, 2026 – Decided April 21, 2026
>
> Before Judges Currier and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 22-04-0080.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Jennifer Davenport, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).
>
> Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant was convicted of aggravated sexual assault, sexual assault, and endangering the welfare of a child, stemming from allegations that he inappropriately touched his eleven-year-old stepdaughter G.R.[1] Defendant appeals from the order admitting four hearsay statements made by the child victim into evidence under N.J.R.E. 803(c)(27), asserting the statements were insufficiently trustworthy. Defendant raises additional arguments in his self-represented brief.

We are satisfied the trial court did not abuse its discretion in admitting the statements. The court properly considered and applied N.J.R.E. 803(c)(27), and the factors outlined in Idaho v. Wright, 497 U.S. 805 (1990), and concluded the statements were trustworthy. We also discern no merit to defendant's arguments posited in his self-represented brief. We affirm.

I.

In December 2021, G.R. was living with her mother, defendant, her brother, and several uncles. She was in sixth grade. After talking to friends G.W. and B.G. about the abuse, G.R. reported it to her guidance counsellor, K.F.

---

[1] We use initials to protect the victim's privacy. R. 1:38-3(c)(9).

The school then contacted the police and G.R. recounted the incidents of sexual assault to Hunterdon County Prosecutor's Office Detective Vanessa Jimenez.

Defendant was charged in an indictment with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Prior to trial, the State sought to admit the four hearsay statements made by G.R. under Rule 803(c)(27), the tender years exception.

The following testimony was elicited during the two hearing days regarding the admissibility of the statements.

Statement from G.R. to G.W.

At the time of the hearing in December 2022, G.W. was in seventh grade. She said she was neighbors with G.R. and they were "very close." She testified that in the Fall of 2021, G.R. called her via FaceTime. G.R. was crying during the call and told G.W. that "[defendant] was touching her since she was a little kid and . . . it hurt . . . and . . . affected her." The conversation ended when G.W. had to leave for dinner. G.W. then attempted to call G.R. back. However, the call did not last long because G.R. hung up after defendant walked into her room. Approximately twenty minutes later, G.R. called her on FaceTime. B.G. was also on the call and G.W. thought G.R. might have been talking to B.G. about

the abuse. The girls did not discuss it again once they were all together on the third call.

Statement from G.R. to B.G.

B.G. testified at the September 2022 hearing date. She was twelve years old and in seventh grade. She stated she was friends with G.R. in the Fall of 2021. According to B.G., G.R. texted her on December 1, 2021, that her stepfather had been inappropriately touching her "for a while." The conversation then continued via FaceTime. G.R. told B.G. "she had never talked about [the abuse] with anyone before and how it was . . . a really sensitive topic for her." B.G. stated G.R. sounded "sad," "scared," "anxious" and "stressed out" during their conversation. B.G. suggested they should talk to the guidance counselor about the situation.

The next day, B.G. went with G.R. to the guidance counselor, K.F. B.G. said G.R. was crying and asked B.G. to tell K.F. what had been happening to her. After B.G. did so, K.F. asked B.G. to leave.

Statement from G.R. to K.F.

K.F. worked as a guidance counselor at the school which G.R. and the other girls attended. She testified that she received an email on December 1, 2021, from G.R. requesting a meeting. The following day, G.R. and B.G. came

to her office and K.F. said they looked "very worried and concerned to tell [her] what they needed to tell [her]." G.R. then told K.F. she had been touched inappropriately by defendant "the night before" and that it had "been happening for a while." G.R. told her that her mom did not know about the abuse. G.R. said defendant usually touched her at nighttime in her bedroom or when G.R.'s mother was not paying attention. She gestured to her chest and area between her legs when asked to describe where she had been touched. K.F. stated G.R. had "trouble making eye contact," her "voice was kind of weak" and she was slumped down and fidgety. K.F. alerted school administration, the Division of Child Protection and Permanency and the police to G.R.'s allegations. She said G.R. did not return to that school after that day.

Statement to Detective Jimenez

Detective Jimenez responded to the school after receipt of G.R.'s allegation of sexual assault and interviewed G.R. in the guidance counselor's office with a handheld recorder. There was no video recording of the interview. The audio recording was played for the court during the motion hearing.

During the interview, G.R. told Jimenez that defendant would touch her "upper chest part, and then sometimes . . . touch[] [her] [vagina]." G.R. said defendant had been touching her for some time but she was scared to tell her

mother because her mother was "a little mean." She explained that the touching would often occur while she was in her bedroom but also while she was in her mother's room. She said she puts a chair against her bedroom door to prevent defendant from coming in. G.R. said defendant touched her over and under her clothes. Although G.R. was unable to give an "exact number," she told Jimenez defendant had touched her "more than twenty times." She expressed an extreme discomfort whenever around defendant and told Jimenez she essentially tried to avoid him at all times.

According to Jimenez, G.R. said she told B.G. about the abuse because B.G. had previously divulged to her that her grandfather did "something similar" and B.G. had disclosed it to K.F. G.R. said she had told defendant to stop touching her.

The trial court granted the State's motion to admit the statements on December 13, 2022, in a comprehensive written decision and accompanying order. The court considered Rule 803(c)(27) and the applicable case law, including Wright, 497 U.S. at 821-22, and determined the statements made to G.W. and B.G. were trustworthy. The court found the statements were spontaneous and consistent, and that G.R. had no motive to fabricate the allegations.

A-2232-23

In considering the statements made to K.F., the court found they "were made in response to noncoercive and nonsuggestive questions by [K.F.]." The statements were also consistent with those made to G.W. and B.G. Under the totality of the circumstances, the court found the statements trustworthy. The court further found the probative value of the statements outweighed any prejudice under a N.J.R.E. 403 analysis.

In addressing the recorded statement made to Detective Jimenez, the court found G.R. was not coerced or pressured into giving the interview and the statement was consistent with those given to her friends and K.F. The court found the statement was trustworthy and admissible under Rules 803(c)(27) and 403.

After trial, the jury found defendant guilty on all counts. The court sentenced defendant to an aggregate term of twenty-five years in prison with five years of parole supervision.

## II.

On appeal, defendant raises a sole point for our consideration in his counseled brief:

> THE IMPROPER ADMISSION OF MULTIPLE UNRELIABLE OUT-OF-COURT STATEMENTS REGARDING SEXUAL ABUSE DENIED THE

DEFENDANT HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.

Defendant raises the following points in his self-represented brief:

POINT I
ALTHOUGH FRESH COMPLAINT EVIDENCE WAS INTRODUCED AT TRIAL, THERE WAS NO LIMITING INSTRUCTION TELLING THE JURY IT COULD NOT USE THE FRESH COMPLAINT EVIDENCE AS EITHER SUBSTANTIVE EVIDENCE OF MR. JARQUIN-JARQUIN['S] GUILT OR AS COR[R]OBATIVE EVIDENCE OF THE VICTIM'S TESTIMONY. THAT ERROR WAS COMPOUNDED BY THE DEFENSE LAWYER FAILING TO OBJECT IN THE INTRODUCTION OF MORE THEM [sic] ONE FRESH COMPLAINT, AND THERE WAS NO LIMITING INSTRUCTION TELLING THE JURY IT COULD NOT USE THE FRESH COMPLAINT AS EVIDENCE.

POINT II
DEFENSE LAWYER FAILING TO OBJECT IN THE INTRODUCTION OF MORE THEM [sic] ONE FRESH COMPLAINT, AND THE TRIAL COURT ERRED IN FAILING TO GIVE THE PROPER JURY INSTRUCTIONS IN THE JURY CHARGE, AND THERE WAS NO LIMITING INSTRUCTION TELLING THE JURY IT COULD NOT USE[] THE FRESH COMPLAINT AS EVIDENCE, AND TO TELL THE JURY WHO [sic] TO TREAT THE TESTIMONY OF B[.]G., K[.F]., AND G[.W.].

POINT III
DEFENSE LAWYER FAILING TO OBJECT IN THE TESTIMONY GIVING [sic] BY LAW ENFORCEMENT THAT DEFENDANT LABEL THE VICTIM A LIAR AS LIVE TESTIMONY BECAUSE

8

A-2232-23

THEY BOLSTER THE CREDIBILITY OF THE VICTIM'S ALLEGATIONS AND ATTACK DEFENDANT'S CREDIBILITY AND THESE STATEMENTS WERE INADMISSIBLE AND SEVERELY PREJUDICIAL ARGUES THAT JUST AS AN [LAW ENFORCEMENT] OFFICER SHOULD NOT BE OPINING ON WITNESS CREDIBILITY THE TRIAL COURT ERRED IN FAILING TO GIVE THE PROPER JURY INSTRUCTIONS IN THE JURY CHARGE, AN[D] TO TELL THE JURY [HOW] TO TREAT THE TESTIMONY OF THE LAW ENFORCEMENT.

A. Our CASE LAW strongly condemns comments by law enforcement that opine on the CREDIBILITY of other witnesses and on a defendant's guilt or innocence.

B. Many [o]ther[] states have addressed this issue[] and found that such testimony is improper.

III.

"[I]n reviewing a trial judge's finding that a child's statement meets the trustworthiness requirement of N.J.R.E. 803(c)(27), appellate courts affirm unless the judge's determination amounted to an abuse of discretion." State v. P.S., 202 N.J. 232, 250 (2010) (quoting State v. Nyhammer, 197 N.J. 383, 411 (2009)).

A trial court's determination of reliability or trustworthiness sufficient to allow admission of evidence should not be disturbed unless, after considering the record and giving the deference owed to the court's credibility findings, it is apparent that the finding is "clearly a mistaken one and so plainly

9

unwarranted that the interests of justice demand intervention and correction[.]"

[Id. at 250-51 (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999) (internal quotation marks and citations omitted)).]

Only in those circumstances may "an appellate court 'appraise the record as if it were deciding the matter at inception and make its own findings and conclusions.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Defendant contends that the trial court erroneously applied the tender years exception under Rule 803(c)(27) in admitting G.R.'s four hearsay statements, asserting the court did not properly consider the trustworthiness factors enumerated in Wright. Defendant argues the "statements were overly cumulative, and made under circumstances that created undue suggestiveness . . . ."

"Hearsay" is defined as a "statement" that "the declarant does not make while testifying at the current trial or hearing" that is offered by a party "in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Rule 803(c)(27) is an exception under these strictly delineated conditions:

> A statement by a child under the age of [twelve] relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil case if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) . . . the child testifies at the proceeding. . . .
>
> [N.J.R.E. 803(c)(27).]

Defendant challenges only the trustworthiness prong of the rule.

In Wright, the United States Supreme Court established factors for courts to use in determining whether a young child's statement may be considered "trustworthy." 497 U.S. at 821-22. These factors include the (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; and (4) lack of motive to fabricate. Ibid. The Court emphasized that "[t]hese factors are . . . not exclusive, and courts have considerable leeway in their consideration of appropriate factors." Id. at 822. In determining whether a statement is trustworthy a court should consider "the totality of the circumstances." P.S., 202 N.J. at 249.

We apply these principles to the four challenged statements.

11

G.R.'s statement to B.G.

The court considered the Wright factors and found it was unclear "whether the statement [G.R.] made was spontaneous because B.G. could not recall what prompted the conversation." However, the court found G.R. was "distressed" when talking to B.G., she used terminology that was not unexpected, but it was not expected "that a child of her age would state she had been inappropriately touched by her stepfather and that it had been happening for a while." The court also found the statement was consistent with the other statements made to G.W., K.F., and Jimenez, and there was no indication of a motive to fabricate. Therefore, the court found G.R.'s statement to B.G. was trustworthy.

Defendant contends the court erred in its determination because G.R.'s statement was not spontaneous. Defendant refers to information disclosed at trial that earlier that day in school, prior to the text that G.R. sent to B.G., B.G. told G.R. "something about [B.G.'s] grandfather touching her." Defendant argues that "the court's conclusion that 'it is not expected that a child of her age would state she had been inappropriately touched' is completely out of place given the context of the conversation, where B.G. had brought up her experiences with her grandfather before G.R. disclosed her own."

12

We note this information was first presented at trial and was not testimony before the court for its consideration at the pre-trial motion hearing. During her direct testimony at trial G.R. testified:

> [E]arlier that day . . . [on December 1, 2021,] [B.G.] had said something about her grandfather touching her, and that like her mom didn't believe her. And I felt very bad because I knew that like . . . that's the same thing that's happening with me, and . . . then so after school I texted her. . . . I was like: Hey, [B.G.], like I know you might not want to talk about it but I was wondering if like you could kinda help me because I want to say something about [the abuse] but I'm scared because like I don't know what could happen. And like her mom didn't believe her, so I was scared that like my mom might not believe me.

Defense counsel did not question either G.R. or B.G. about this testimony.

We are satisfied the trial court did not abuse its discretion in its findings and determination. The court did not have any testimony regarding a prior exchange between the girls at school that day. Although that information might have affected the spontaneity determination, defense counsel did not request the court to reconsider its ruling or preclude any testimony regarding the statement. Furthermore, that was just one factor. The court also found G.R.'s statement to B.G. was consistent with her own testimony and statements made to G.W., K.F., and Detective Jimenez. Additionally, G.R.'s emotional response when recounting her abuse to B.G.—which included anxiety, sadness, crying, and

13

difficulty talking or breathing—further supports the credibility of her statement. In addition, defendant presented no motive for any fabrication of the allegations.

The court did not abuse its discretion in finding G.R.'s statement to B.G. trustworthy in accordance with Rule 803(c)(27).

G.R.'s statement to G.W.

Defendant contends that the trial court erred in failing to consider the fact that "G.R. had just spoke[n] to B.G. before speaking with G.W.," creating the specter of some "outside influence."

The trial court did not abuse its discretion in admitting this statement. G.R.'s FaceTime call to G.W. was spontaneous. She had not yet told anyone about the abuse. She was crying and her statement was consistent with later disclosures. The court's analysis of the factors supports its conclusion that G.R.'s statement was trustworthy.

G.R.'s statement to K.F.

Defendant contends that the conversations between G.R. and her friends, in conjunction with "G.R.'s plan to meet with B.G. and go to K.F.'s office together show[] that this statement was not spontaneous."

14

The trial court did not abuse its discretion in finding G.R.'s statement to K.F. trustworthy. As the court acknowledged, spontaneity is only one factor in the analysis of the totality of the circumstances.

G.R.'s statements to K.F. were made without coercion or undue influence. K.F. testified that after B.G. told her about the abusive situation, K.F. "thanked [B.G.] for being a good friend and bringing [G.R.] to [her], but then . . . asked her to go back to class, [and] not talk to any students about it." K.F. then asked G.R. for more information in a non-leading manner. As the trial court stated, "[G.R.'s] statements were made in response to noncoercive and nonsuggestive questions by the guidance counselor. . . . These questions did not suggest an answer to [G.R.] nor were they threatening, they merely requested details about what the alleged inappropriate touching was so that the guidance counselor could provide the proper assistance to [G.R.]." As discussed above, G.R.'s consistent account, evident emotional distress, absence of unexpected terminology, but unexpected subject and lack of any indication of fabrication all support the finding of trustworthiness.

G.R.'s statement to Detective Jimenez.

Defendant contends that G.R.'s statement to Jimenez lacked trustworthiness because the court failed to consider how G.R.'s previous

15

discussions with her friends and guidance counselor influenced her statement to Jimenez. Defendant further asserts that "Jimenez's failure to video record [G.R.'s] statement left the trial court guessing as to how G.R. was physically responding during the interview."

The trial court did not find the absence of a videotape was dispositive in determining the trustworthiness of G.R.'s statement to Jimenez. The court stated that

> [a]lthough [G.R.'s] statement to Detective Jimenez was not spontaneous, the detective asked nonleading questions in an uncoercive manner. [G.R.] was distressed and anxious and sometimes cried during her interview. The testimony did not indicate any potential motivations to fabricate the allegations . . . . The fact that Detective Jimenez did not take a video statement due to what she described as an emergent situation does not affect [the] court's decision as to its trustworthiness.

In P.S., the Supreme Court declined to "establish a per se rule that in the absence of a [video]tape recording, a child victim's statement should be deemed inadmissible . . . ." 202 N.J. at 252. Rather, the Court emphasized that evaluating the trustworthiness of the statement depends on a review of the totality of the circumstances. Id. at 253 ("Because the tape is only one factor in the totality of circumstances analysis [the Court] established regarding

trustworthiness, it follows that the absence of a tape, standing alone, is not dispositive.").

Jimenez testified that at the time of these events, detectives did not have body worn cameras, so she was unable to take video of the interview. Jimenez decided to conduct the interview in the school because it was the end of the school day and the allegations involved a household member. In addition, G.R.'s younger brother was waiting for her to go home. Jimenez was not sure whether G.R. would be in defendant's care after school. Therefore, she conducted the interview in the guidance counselor's office rather than at the police station.

We discern no abuse of discretion in the admission of this statement. A review of the nearly hour-long interview transcript reveals a trustworthy statement, unaffected by bias or external influence. G.R.'s statement to Jimenez was consistent with her previous statements made to her friends and K.F. G.R. demonstrated a clear understanding of the importance of telling the truth, showed no evidence of an improper motive to fabricate charges, and had no prior discussion with Jimenez before the interview.

Without a video recording, facial expressions and body movements could not be observed, however the court stated it "was able to hear the inflections in [G.R.'s] voice," supporting its conclusion regarding certain factors. The trial

17

court did not abuse its discretion in finding G.R.'s statement to Jimenez to be trustworthy.

Defendant contends that G.R.'s statements to B.G. and G.W. should have been excluded "as unduly cumulative and repetitive," given "G.R.'s own testimony at trial, and because her statements to K.F. and Jimenez were also going to be admitted."

In analyzing the statements under Rule 403, the trial court found that "[t]he probative value of B.G.'s and G.W.'s testimony [was] high." The court found noteworthy "the fact that neither girl testified as to any details of the sexual misconduct; rather, that there was inappropriate touching by [defendant] over a period of time and it hurt." Thus, "[t]he probative value of this testimony outweigh[ed] any prejudice thereby caused."

Rule 403 states that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, . . . or (b) . . . needless presentation of cumulative evidence." See also State v. Higgs, 253 N.J. 333, 358 (2023) ("Probative value is 'the tendency of evidence to establish the proposition that it is offered to prove.'") (quoting 1 McCormick On Evid. § 185.2 (9th ed.)).

Here, the trial court did not abuse its discretion. The testimony of B.G. and G.W., although brief, was highly significant. Their statements, as being consistent with G.R.'s account, strengthened G.R.'s credibility and her truthfulness in describing her encounters with defendant.

In considering the potential prejudice, the trial court noted B.G. and G.W. did not provide specific or graphic details regarding any sexual assault. It was for the jury to determine whether the described inappropriate touching constituted sexual assault under the charged offenses. Accordingly, the court did not abuse its discretion in admitting the statements of B.G. and G.W.

We need only address briefly one of defendant's arguments set forth in his self-represented brief as it and the remaining arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Defendant asserts the court erred in failing to instruct the jury not to consider "fresh complaint testimony" as substantive evidence of guilt or to bolster the credibility of an alleged victim. The "fresh complaint" doctrine is a common law exception to the hearsay rule allowing "the State to introduce evidence that the victim did indeed make a complaint within a reasonable time after the alleged assault." State v. P.H., 178 N.J. 378, 392 (2004).

Unlike the tender rule exception, fresh complaint evidence is admissible solely to show that "the alleged victim complained [at a particular time], not to corroborate the victim's allegations concerning the crime." State v. W.B., 205 N.J. 588, 616-17 (2011) (alteration in original) (quoting State v. R.E.B., 385 N.J. Super. 72, 89 (App. Div. 2006)).

Here, the State sought to introduce G.R.'s statements pursuant to Rule 803(c)(27), not under the fresh complaint doctrine. Accordingly, the court did not err in failing to instruct the jury on fresh complaint evidence. Moreover, the argument was not raised to the trial court and is not appropriate for our review. See State v. Robinson, 200 N.J. 1, 20-22 (2009).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division